# 22-1659

# United States Court of Appeals
### *for the*
# Fourth Circuit

---

BACARDI & COMPANY LIMITED; BACARDI USA, INC.,

*Plaintiffs/Appellants,*

– v. –

UNITED STATES PATENT & TRADEMARK OFFICE; KATHI VIDAL, in her official capacity as the Director of the United States Patent and Trademark Office,

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# OPENING BRIEF OF APPELLANTS

DAVID M. ZIONTS
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-5987

MICHAEL C. LYNCH
DAMON W. SUDEN
KELLEY DRYE & WARREN, LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800

*Counsel for Appellants*

 COUNSEL PRESS • VA – (804) 648-3664

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1659__      Caption: __Bacardi & Company Limited v. USPTO__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Bacardi & Company Limited__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Bacardi Limited is the ultimate parent corporation of Bacardi & Company Limited.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Michael C. Lynch                    Date:    June 27, 2022

Counsel for: Bacardi & Company Limited

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __22-1659__        Caption: __Bacardi & Company Limited v. USPTO__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Bacardi U.S.A. Inc.__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Bacardi Limited is the ultimate parent corporation of Bacardi U.S.A. Inc.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Michael C. Lynch                          Date: _____June 27, 2022_____

Counsel for: Bacardi U.S.A. Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT .......................................................3

STATEMENT OF ISSUES ...............................................................4

STATEMENT OF THE CASE.............................................................4

    I.    UNDER THE LANHAM ACT, A REGISTRATION
        EXPIRES AT THE END OF ITS 10-YEAR TERM,
        UNLESS IT IS RENEWED WITH PAYMENT OF A
        REQUIRED FEE.............................................................4

    II.    CUBAEXPORT'S HAVANA CLUB REGISTRATION
        EXPIRED IN 2006 BECAUSE IT FAILED TO PAY THE
        REQUIRED RENEWAL FEE ON TIME ...........................7

    III.    THE USPTO GRANTED RENEWAL OF CUBAEXPORT'S
        REGISTRATION A DECADE AFTER IT EXPIRED BY
        OPERATION OF LAW .................................................10

    IV.    THE DISTRICT COURT HELD THAT THE USPTO'S
        DECISION TO RENEW AN EXPIRED TRADEMARK
        REGISTRATION IS UNREVIEWABLE .........................13

SUMMARY OF ARGUMENT ...........................................................15

STANDARD OF REVIEW ..............................................................19

ARGUMENT ...............................................................................19

    I.    THE USPTO'S ACTION GRANTING RENEWAL OF AN
        EXPIRED TRADEMARK REGISTRATION IS
        REVIEWABLE UNDER THE ADMINISTRATIVE
        PROCEDURE ACT .....................................................19

        A.    There Is A "Strong Presumption" In Favor Of Judicial
            Review Which The Agency Bears A "Heavy Burden"
            To Overcome............................................................20

B.     Section 1071(b)(2) Does Not Unambiguously Expressly Preclude Judicial Review Of The Agency's Unlawful Renewal Of An Expired Trademark. ........................24

C.     The Structure Of The Lanham Act Does Not Clearly Imply That Congress Intended To Permit The USPTO To Violate The Lanham Act's Renewal Provisions Without Review ........................................................31

     1.     The Lanham Act's "Appeal to Courts" Provision Does Not Clearly Imply An Intent To Preclude Review ........................................................32

     2.     The Lanham Act's Administrative Cancellation Procedures Do Not Clearly Imply An Intent To Preclude Review ........................................36

     3.     The Lack Of Other Viable Means Of Review Strongly Counsels Against A Finding Of Preclusion ........................................................41

D.     Bacardi Has No Other Adequate Remedy In Court For The USPTO's Unlawful Action Granting Renewal Of An Expired Registration ........................................44

II.     THE USPTO'S ACTION GRANTING RENEWAL OF AN EXPIRED TRADEMARK REGISTRATION IS INDEPENDENTLY REVIEWABLE VIA AN *ULTRA VIRES* CLAIM ........................................................49

CONCLUSION ........................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abbott Laby's v. Gardner,*
387 U.S. 136 (1967) ....................................................................33

*ACLU v. Clapper,*
785 F.3d 787 (2d Cir. 2015) ............................................... 40, 41

*Adams v. Bain,*
697 F.2d 1213 (4th Cir. 1982).................................................19

*Adamski v. McHugh,*
304 F. Supp. 3d 227 (D.D.C. 2015)................................... 49-50

*Aid Ass'n for Lutherans v. U.S. Postal Serv.,*
321 F.3d 1166 (D.C. Cir. 2003)................................................49

*Allied Corp. v. U.S. Int'l Trade Comm'n,*
850 F.2d 1573 (Fed. Cir. 1988) ...............................................34

*Am. Clinical Lab'y Ass'n v. Azar,*
931 F.3d 1195 (D.C. Cir. 2019)................................................23

*Am. Online, Inc. v. AT & T Corp.,*
243 F.3d 812 (4th Cir. 2001)...................................................28

*Barlow v. Collins,*
397 U.S. 159 (1970) ............................................... 22, 23, 41

*Belmora LLC v. Bayer Consumer Care AG,*
819 F.3d 697 (4th Cir. 2016) ..................................................28

*Block v. Cmty. Nutrition Inst.,*
467 U.S. 340 (1984) ............................................... 31, 42, 43

*Bonehead Brands, LLC v. Direct Impulse Design,*
No. 9206833, 2019 WL 646461 (T.T.A.B. Feb. 13, 2019)................43

*Bowen v. Massachusetts,*
487 U.S. 879 (1988) ............................................... 45, 46

*Bowen v. Mich. Acad. of Fam. Physicians,*
476 U.S. 667 (1986) ............................................... 1, 20, 21, 33

*Buchanan v. Apfel*,
  249 F.3d 485 (6th Cir. 2001) ...............................................................40

*Chang v. United States*,
  327 F.3d 911 (9th Cir. 2003) ...............................................................47

*Checkers Drive-In Rests., Inc. v. Comm'r of Pats. & Trademarks*,
  51 F.3d 1078 (D.C. Cir. 1995)............................................................4, 5

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice (CREW)*,
  846 F.3d 1235 (D.C. Cir. 2017)........................................................ 46, 47

*Columbia Gas Transmission Corp. v. Drain*,
  237 F.3d 366 (4th Cir. 2001) ...............................................................19

*Cuozzo Speed Techs., LLC v. Lee*,
  579 U.S. 261 (2016) ...............................................................................22

*Darby v. Cisneros*,
  509 U.S. 137 (1993) ........................................................................ 45, 46

*Durox Co. v. Duron Paint Mfg. Co.*,
  320 F.2d 882 (4th Cir. 1963) ...............................................................27

*El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health*,
  396 F.3d 1265 (D.C. Cir. 2005)............................................................46

*Farmers Union Milk Mktg. Coop. v. Yeutter*,
  930 F.2d 466 (6th Cir. 1991) ...............................................................41

*Galleon S.A. v. Havana Club Holding, S.A.*,
  Cancellation No. 92024108, 2004 WL 199225
  (T.T.A.B. Jan. 29, 2004)..................................................... 32, 44, 51

*Gonzalez Boisson v. Pompeo*,
  459 F. Supp. 3d 7 (D.D.C. 2020)..........................................................47

*Guerrero-Lasprilla v. Barr*,
  140 S. Ct. 1062 (2020)...................................................................... 23, 31

*Hanauer v. Reich*,
  82 F.3d 1304 (4th Cir. 1996) ................................................ 3, 49, 51, 52

*In re Culligan Int'l*,
  915 F.2d 680 (Fed. Cir. 1990) ...............................................................5

*In re Holland Am. Wafer Co.*,
737 F.2d 1015 (Fed. Cir. 1984) ..............................................5

*In re Michaels Stern & Co., Inc.*,
199 U.S.P.Q. 382 (Comm'r Pat. 1978) ...................................6

*Int'l Ladies' Garment Workers' Union v. Donovan*,
722 F.2d 795 (D.C. Cir. 1983)...............................................34

*Kansas ex rel. Kan. Dep't for Child. & Fams. v. SourceAmerica*,
826 F. App'x 272 (4th Cir. 2020).........................................42

*Kappos v. Hyatt*,
566 U.S. 431 (2012) ..................................................... 34, 35

*King v. Burwell*,
759 F.3d 358 (4th Cir. 2014) ....................................... 47, 48

*Leedom v. Kyne*,
358 U.S. 184 (1958) ...............................................................3

*Lindahl v. Off. of Pers. Mgmt.*,
470 U.S. 768 (1985) .............................................. 24, 25, 33

*Lovelace v. Lee*,
472 F.3d 174 (4th Cir. 2006) ................................................52

*Mach Mining, LLC v. EEOC*,
575 U.S. 480 (2015) .............................................................21

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) ........................................... 21, 29, 33

*Nyunt v. Chairman, Broadcasting Bd. of Governors*,
589 F. 3d 445 (D.C. Cir. 2009).............................................51

*Obioha v. Gonzales*,
431 F.3d 400 (4th Cir. 2005) ................................................23

*Ohio River Valley Env't Coal., Inc. v. Kempthorne*,
473 F.3d 94 (4th Cir. 2006) ......................................... 22-23

*Park 'n Fly v. Dollar Park & Fly*,
469 U.S. 189 (1985) .............................................................43

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
139 S. Ct. 2051 (2019)................................................. 25=26

*Rollerson v. Brazos River Harbor*,
 6 F.4th 633 (5th Cir. 2021) ................................................... 46, 47, 48

*Sackett v. EPA*,
 566 U.S. 120 (2012) ............................................................... 1, 34

*Salinas v. U.S. R.R. Ret. Bd*,
 141 S. Ct. 691 (2021) ................................................................. 22

*SAS Inst., Inc. v. Iancu*,
 138 S. Ct. 1348 (2018) ................................................... 22, 24, 42

*Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth.*,
 844 F.3d 414 (4th Cir. 2016) .................................................... 51

*Shakespeare Co. v. Silstar Corp. of Am., Inc.*,
 110 F.3d 234 (4th Cir. 1997) .................................................... 27

*Shakespeare Co. v. Silstar Corp. of Am., Inc.*,
 9 F.3d 1091 (4th Cir. 1993) .......................................... 39, 40, 43

*Shammas v. Focarino*,
 784 F.3d 219 (4th Cir. 2015) ............................................ 16, 30

*SourceAmerica v. U.S. Dep't of Educ.*,
 368 F. Supp. 3d 974 (E.D. Va. 2019) ...................................... 41

*Swatch AG v. Beehive Wholesale, LLC*,
 739 F.3d 150 (4th Cir. 2014) .................................................... 35

*Traynor v. Turnage*,
 485 U.S. 535 (1988) .................................................................. 25

*Trudeau v. FTC*,
 456 F.3d 178 (D.C. Cir. 2006) .................................................. 49

*U.S. Pat. & Trademark Off. v. Booking.com BV*,
 140 S. Ct. 2298 (2020) ...................................................... 4, 30, 35

*United States v. Dohou*,
 948 F.3d 621 (3d Cir. 2020) .................................................... 23

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
 535 U.S. 635 (2002) .................................................................. 33

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
 139 S. Ct. 361 (2018) ................................................................ 21

*Young v. AGB Corp.*,
    152 F.3d 1377 (Fed. Cir. 1998) ..........................................36

**Statutes & Other Authorities:**

5 U.S.C. § 702 ...........................................................3, 19

5 U.S.C. § 704 ................................. 15, 17-18, 45, 46

5 U.S.C. § 706 .............................................................3

5 U.S.C. § 706(2) ......................................................19

5 U.S.C. § 8128(b) ...................................................25

15 U.S.C. § 1058(a) ...................................................5

15 U.S.C. § 1059(a) ..................................... *passim*

15 U.S.C. § 1064 .................................. 13-14, 39

15 U.S.C. § 1064(3) ......................................... 39, 40

15 U.S.C. § 1064(4) ................................................39

15 U.S.C. § 1064(5) ................................................39

15 U.S.C. § 1064(6) ................................................39

15 U.S.C. § 1066a ..................................................36

15 U.S.C. § 1066a(c)(3) ........................................24

15 U.S.C. § 1066b ..................................................36

15 U.S.C. § 1066b(d)(3) .......................................24

15 U.S.C. § 1071 ..................................... *passim*

15 U.S.C. § 1071(a)(1) ..........................................26

15 U.S.C. § 1071(b) ................................. *passim*

15 U.S.C. § 1071(b)(1) ..........................................27

15 U.S.C. § 1071(b)(2) ............................. *passim*

15 U.S.C. § 1071(b)(3) ..........................................30

15 U.S.C. § 1071(b)(4) ..........................................29

28 U.S.C. § 1291 ...................................................................................4

28 U.S.C. § 1331 ...................................................................................3

28 U.S.C. § 1338 ...................................................................................3

28 U.S.C. § 2409a(a).............................................................................29

33 U.S.C. § 1369(b)(2)..........................................................................26

35 U.S.C. § 145 ............................................................................. 34, 35

38 U.S.C. § 211(a) ................................................................................25

42 U.S.C. § 7607(b)(2)..........................................................................26

42 U.S.C. § 9613(a) ..............................................................................26

31 C.F.R. § 515.201 ................................................................................7

31 C.F.R. § 515.527(a)(2).......................................................................9

31 C.F.R. § 515.336 ................................................................................9

37 C.F.R. § 2.146 .................................................................................10

37 C.F.R. § 2.182 ......................................................................... 5, 6, 11

37 C.F.R. § 2.183 ......................................................................... 5, 6, 11

37 C.F.R. § 2.184 .................................................................................11

37 C.F.R. § 2.184(a)................................................................................6

37 C.F.R. § 2.184(b)................................................................................6

37 C.F.R. § 2.184(b)(1)...........................................................................6

37 C.F.R. § 2.185 .................................................................................11

37 C.F.R. § 2.186 .................................................................................11

60 Fed. Reg. 54,194 (Oct. 20, 1995).......................................................7

64 Fed. Reg. 25,808 (May 13, 1999) .......................................................9

Pub. L. No. 105-277, § 211(a)(1), 112 Stat. 2681 ...................................9

S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)..................................21

Trademark Manual of Examining Procedure § 1606.13(a) (5th Ed. Sept. 2007) .....6

Trademark Manual of Examining Procedure § 1611 (5th Ed. Sept. 2007)...............6

Time and again, the Supreme Court has enforced a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986). The District Court here found this to be the rare case overcoming the presumption. Yet it did not identify the type of statutory text Congress usually uses to preclude review. Nor could it find clear and convincing indications that Congress meant implicitly to preclude review. Instead, the District Court found preclusion based on the unremarkable fact that Congress adopted a specialized scheme of review applicable for certain other matters, but not the agency action at issue here. The Administrative Procedure Act ("APA") exists for precisely this type of situation. As the Supreme Court has held, if the existence of a remedy in one circumstance could implicitly preclude another remedy in another circumstance, the presumption favoring review "would not be much of a presumption at all." *Sackett v. EPA*, 566 U.S. 120, 129 (2012). The fundamental error at issue on this appeal is that the District Court treated the presumption favoring review as no presumption at all.

The specific agency action at issue is a decision by the United States Patent and Trademark Office ("USPTO") to grant an administrative petition to renew a trademark registration. Plaintiffs Bacardi & Company Limited and Bacardi, U.S.A., Inc. (collectively, "Bacardi") claim that this action violated the law.

Specifically, in violation of the Lanham Act, the USPTO purported to renew a trademark registration that had expired a decade earlier by operation of law when the registrant failed to pay the statutorily required fees by the statutorily required deadline. Without timely payment of the fees, the USPTO, by its own admission, "has no discretion but to issue a refusal stating that the registration will be canceled and/or has expired," and then to fulfill its "ministerial record-keeping function" of updating the registry. (JA37-38.) Yet the agency did not do what it previously admitted the law required. Instead, after sitting on the registrant's petition to the Director for ten years, the USPTO ultimately decided to retroactively accept payment of the fees and renew the registration without any statutory basis to do so. This improperly renewed registration is blocking Bacardi from registering its own mark, and this lawsuit is the only way for Bacardi, or anyone else, to ask a court to decide the legality of the USPTO's action.

Bacardi therefore filed a complaint seeking to set aside the USPTO's unlawful agency action under the Administrative Procedure Act or, alternatively, the *ultra vires* doctrine, both of which ensure that judicial review is available to rein in agency action that exceeds statutory bounds. Without judicial review, compliance with the law would rest, unchecked, in the agency's hands—something the Supreme Court has warned against repeatedly. Yet the District Court refused even to consider whether the USPTO's action complied with the law. Instead, the

District Court held that Congress had immunized the agency's decision from judicial review. In other words, even if the agency violated the Lanham Act, no court can do anything about it. This momentous conclusion flies in the face of the strong presumption in favor of judicial review of agency action and is inconsistent with the plain text of the statutory provisions on which the District Court relied.

Left undisturbed, the District Court's order would render the USPTO's decisions to grant renewals a lawless zone where anything goes, without consequence. But this is not the scheme Congress created nor intended in the Lanham Act. Certainly, the agency cannot meet its heavy burden of showing clear and convincing evidence that Congress meant to insulate the USPTO's action from any review. The District Court's order dismissing Bacardi's complaint at the threshold, without allowing it a day in court to show that the agency acted contrary to law, should be reversed.

## JURISDICTIONAL STATEMENT

Plaintiffs Bacardi & Company Limited and Bacardi, U.S.A., Inc. brought claims under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, and the *ultra vires* doctrine claiming that the USPTO "exceeded the scope of its delegated authority or violated a clear statutory mandate" under the Lanham Act. *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996); *Leedom v. Kyne*, 358 U.S. 184, 188 (1958). The District Court had jurisdiction over these claims pursuant to 28 U.S.C.

sections 1331 and 1338.  The District Court entered final judgment dismissing these claims on April 6, 2022.  Bacardi & Company Limited and Bacardi, U.S.A., Inc. timely filed their notice of appeal on June 3, 2022.  (JA56-58.)  This Court has jurisdiction pursuant to 28 U.S.C. section 1291.

## STATEMENT OF ISSUES

1. Whether a claim that the USPTO violated the Lanham Act by granting a petition to renew a trademark registration that had already expired is reviewable under the Administrative Procedure Act.

2. Whether a claim that the USPTO violated the Lanham Act by granting a petition to renew a trademark registration that had already expired is reviewable under the *ultra vires* doctrine.

## STATEMENT OF THE CASE

## I. UNDER THE LANHAM ACT, A REGISTRATION EXPIRES AT THE END OF ITS 10-YEAR TERM, UNLESS IT IS RENEWED WITH PAYMENT OF A REQUIRED FEE.

The Lanham Act "establishes a system of federal trademark registration" and accords "valuable benefits" to the owner of a registration.  *U.S. Pat. & Trademark Off. v. Booking.com BV*, 140 S. Ct. 2298, 2302 (2020).  For that reason, Congress has sought to ensure the Register is free of "deadwood."  *Checkers Drive-In Rests., Inc. v. Comm'r of Pats. & Trademarks*, 51 F.3d 1078, 1085 (D.C. Cir. 1995).  Thus, the Lanham Act requires owners of a registration to take certain steps in order to maintain their trademark registrations.  Section 8 of the Lanham

4

Act requires the owner of a registration to file an affidavit between the ninth and tenth year after registration testifying to the use of the mark in commerce and then every ten years thereafter. 15 U.S.C. § 1058(a). If the owner does not comply with section 8, the registration "shall be cancelled by the Director" of the USPTO. *Id.*

Separately, section 9 of the Lanham Act requires renewal of a trademark registration every ten years. *Id.* § 1059(a). A "written application," including "payment of the prescribed fee," must be made before the end of the ten-year registration period, or "within a grace period of 6 months" thereafter. *Id.*; 37 C.F.R. §§ 2.182-2.183. Courts have long recognized that the "fee is a statutory element of the complete application for renewal, and pursuant to the statute, a complete application must be filed within the time limit set forth." *In re Culligan Int'l*, 915 F.2d 680, 682 (Fed. Cir. 1990); *see also In re Holland Am. Wafer Co.*, 737 F.2d 1015, 1018 (Fed. Cir. 1984) ("A complete application must be submitted within a specific statutory time period."). The "[t]imeliness set by statute is not a minor technical defect which can be waived by the Commissioner." *In re Holland Am. Wafer Co.*, 737 F.2d at 1018. "Congress made no exception for the innocent or the negligent." *Checkers Drive-In Rests.*, 51 F.3d at 1085.

Like the federal courts, the USPTO has interpreted section 9, consistent with its plain language, as making payment of the fee a "requirement[] for a

complete renewal application." 37 C.F.R. § 2.183; *see also In re Michaels Stern & Co., Inc.*, 199 U.S.P.Q. 382, 383 (Comm'r Pat. 1978) ("The fee is a statutory element of the complete application for renewal and pursuant to the Statute the complete application must be filed within the time limits set forth therein."). The USPTO has confirmed by regulation that "[i]f no renewal application is filed within [the statutory] time period, the registration will expire." 37 C.F.R. § 2.182; *accord* Trademark Manual of Examining Procedure ("TMEP") § 1611 (5th Ed. Sept. 2007).

If a renewal application is "deficient," section 9 of the Lanham Act provides that "the deficiency may be corrected *within the time prescribed after notification of the deficiency*, upon payment of a surcharge prescribed therefor." 15 U.S.C. § 1059(a) (emphasis added). If there is a deficiency, "the Office will issue a notice," referred to as "the Office action." 37 C.F.R. §§ 2.184(a-b). Pursuant to section 9, the USPTO has, via regulation, "prescribed" a time for correcting such a deficiency: "within six months of the date of issuance of the Office action, or before the expiration date of the registration, whichever is later." 37 C.F.R. § 2.184(b)(1); TMEP § 1606.13(a) (same). "If no response is filed within this time period, the registration will expire, unless time remains in the grace period under section 9(a) of the Act." 37 C.F.R. § 2.184(b)(1).

## II. CUBAEXPORT'S HAVANA CLUB REGISTRATION EXPIRED IN 2006 BECAUSE IT FAILED TO PAY THE REQUIRED RENEWAL FEE ON TIME.

Beginning in the nineteenth century, the Arechabala family operated a family business in Cuba that distilled and sold HAVANA CLUB rum. (JA15 ¶ 54.) They registered the HAVANA CLUB trademark in the United States in 1935. (JA15 ¶ 55.) In 1960, however, the Castro regime stole the company's assets at gunpoint, including its factory, equipment, books, and records, and forced the Arechabala family to flee the country. (JA15 ¶ 57.) With the Arechabalas exiled and unable to produce their famous rum, their U.S. trademark registration expired. (JA15-16 ¶¶ 57-61.) Seizing the opportunity it created by this unlawful expropriation, the Cuban government, through the state-owned entity Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"), registered the HAVANA CLUB mark for itself in the United States. (JA16 ¶¶ 60-63.)[1]

Years later, as part of their efforts to return genuine HAVANA CLUB rum

---

[1] Because of the U.S. embargo on Cuba, Cubaexport could not sell its ersatz HAVANA CLUB rum in the United States. (JA6 ¶ 6); *see also* 31 C.F.R. § 515.201. However, at the time and up until 1999, Treasury Department regulations permitted Cuba and Cuban nationals to register trademarks in the United States: "Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized." *See* 60 Fed. Reg. 54,194, 54,196 (Oct. 20, 1995). As explained below, Congress placed limitations on this authorization beginning in 1998, which the Treasury Department effected in 1999.

to the U.S. market, the Arechabala family sold its interest in the mark to Bacardi, which as the successor-in-interest promptly petitioned the USPTO to cancel Cuba's registration on multiple grounds. (JA16 ¶¶ 64-65.) Bacardi also filed its own application to register the HAVANA CLUB trademark, but the USPTO informed Bacardi that its application would be denied because of Cubaexport's existing registration. (JA16-17 ¶ 66.) In 2004, the Trademark Trial and Appeal Board ("TTAB") denied Bacardi's cancellation petition. Pursuant to 15 U.S.C. section 1071(b), Bacardi then filed a civil action in the United States District Court for the District of Columbia challenging the TTAB's denial of cancellation. *Bacardi & Co. Ltd. v. Empresa Cubana Exporiadora de Alimentos y Productos Varios*, No. 1:04-cv-00519-EGS (D.D.C). That lawsuit is still pending.

Irrespective of these cancellation proceedings, Cubaexport's HAVANA CLUB registration was set to lapse on July 27, 2006.[2] (JA17 ¶ 68.) However, because of a law passed by Congress in 1998 to protect the victims of foreign government confiscations, like the Arechabalas and Bacardi, from having their U.S. trademark registrations stolen too, Cubaexport was no longer legally permitted to pay the required renewal fee without first obtaining a specific license from the Office of Foreign Assets Control ("OFAC"). Omnibus Consolidated and

---

[2]     For reasons not relevant to this appeal, Bacardi believes that the initial registration in 1976 and its subsequent 1996 renewal were both fraudulently obtained and improper, and does not concede that the registration was active or enforceable in 2006.

Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 211(a)(1), 112 Stat. 2681.[3]  Nevertheless, Cubaexport filed a renewal application on December 14, 2005, and purported to submit the statutorily required renewal fee without a license.  (JA17 ¶ 69.)  OFAC informed Cubaexport and the USPTO that the payment could not lawfully be made.  (*Id.*)  On July 20, 2006, the Post Registration Examiner (the "Examiner") issued an Office Action rejecting the renewal application because the "required fee . . . has not been paid."  (JA17 ¶ 72.)  Pursuant to section 9 of the Lanham Act and its own regulations, the USPTO prescribed a "RESPONSE TIME DEADLINE" of six months for Cubaexport to correct the deficiency by submitting the required fees, or else "the registration will be deemed cancelled/expired."  (JA17-18 ¶ 73.)[4]

On July 28, 2006, OFAC denied Cubaexport's request for a specific license to pay the renewal fee, explaining that it received guidance from the State Department that issuing such a license would be "inconsistent with U.S. policy."

---

[3]     Pursuant to this statute, the Treasury Department adopted a new regulation providing: "No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented."  64 Fed. Reg. 25,808, 25,813 (May 13, 1999) (codified at 31 CFR § 515.527(a)(2)).

[4]     The Office Action used the formulation "cancelled/expired" because Cubaexport had made a "combined" filing under sections 8 and 9.  (JA18 ¶ 75; JA28.)  As noted above, failure to comply with section 8 results in cancellation, and failure to comply with section 9 results in expiration.  (*See* Statement of the Case § I, *supra*.)

(JA18 ¶ 74.)  Thus, on August 3, 2006, the Examiner issued an Office Action finding that Cubaexport's renewal filing "cannot be accepted," and "the registration will be cancelled/expired."  (JA18 ¶ 75, JA28.)

## III.   THE USPTO GRANTED RENEWAL OF CUBAEXPORT'S REGISTRATION A DECADE AFTER IT EXPIRED BY OPERATION OF LAW.

On October 4, 2006, Cubaexport petitioned the Director of the USPTO to review the Examiner's decision under 37 C.F.R. section 2.146, which authorizes the director to review certain decisions made by examiners.  (JA19 ¶ 80.)  Nothing in the Lanham Act or USPTO regulations, however, provides that the mere filing of a petition to the Director extends the time prescribed for curing deficiencies in a renewal application.  Just a week before filing its petition to the Director, Cubaexport had commenced an APA suit against OFAC challenging its decision not to grant a specific license.  (JA19 ¶ 82.)  The USPTO suspended action on the petition pending disposition of Cubaexport's lawsuit, which Cubaexport lost in 2012.  (JA19 ¶ 83.)  Thereafter, Cubaexport argued that the USPTO could not remove its registration from the registry without the agency obtaining a specific license from OFAC.  (JA19-20 ¶ 84.)  In response, OFAC asked the USPTO to provide "an explanation of any applicable statutory requirements, rules and procedures."  (JA20 ¶ 86.)

On September 27, 2012, the Commissioner for Trademarks provided OFAC

a memorandum with the requested explanation. It explained that, "[i]f the renewal application is not filed within the time periods set by statute, or if it is timely filed but unacceptable because it does not meet the statutory requirements, *see* 15 U.S.C. § 1059(a), the registration 'expires' as of the end of its term. 37 C.F.R. §§ 2.182-2.186." (JA20-21 ¶¶ 87-88, JA36.) The Commissioner further explained that "the Director has no discretion to waive the requirements of §§ 8 and 9" of the Lanham Act. (JA20-21 ¶¶ 87-88, JA38.) The Commissioner noted that Cubaexport sought to prevent the USPTO from merely "updating [its] records to reflect the expired and canceled status of the [HAVANA CLUB] registration." (JA40.) In response, OFAC stated on November 30, 2012, that "no license is required . . . for the USPTO actions at issue," because the USPTO's "ministerial record-keeping function" of updating its records "does not alter the registration's legal status," which "changes because the term of the registration ends without the owner meeting the statutory requirements for renewal." (JA21 ¶ 89.)

Cubaexport's petition to the Director remained pending for several more years without any action by the USPTO. Then, on January 11, 2016, OFAC reversed course and issued a specific license for Cubaexport to "engage in all transactions necessary to renew and maintain the HAVANA CLUB trademark registration No. 1,031,651 at the United States Patent and Trademark Office (USPTO), including those related to Cubaexport's submission filed with the

USPTO on or about December 14, 2005, and the payment referenced therein." (JA21-22 ¶ 93.)  Cubaexport sent the USPTO a copy of the specific license on January 12, 2016.  (JA22 ¶ 94.)

Just one day later, on January 13, 2016, the Commissioner for Trademarks, acting on behalf of the Director of the USPTO, purportedly granted Cubaexport's ten-year old petition.  The Commissioner noted that non-payment of the required fee is a "deficiency that can be corrected . . . as long as the correction occurs within the time prescribed after notification of the deficiency." (JA22 ¶ 95, JA44.)  She did not mention, however, that "notification of the deficiency" was provided on July 20, 2006, and again on August 3, 2006, and that the "time prescribed" for correction, both by USPTO regulation and the Office Actions themselves, was six months.  Instead, the Commissioner merely asserted—without citation or support—that by "obtaining an OFAC license" in 2016 "that authorizes [Cubaexport's payment of the fee]," Cubaexport had now "satisfied the fee requirement" of the Lanham Act.  (JA22 ¶ 95, JA44.)  On this basis, the Commissioner declared that "[t]he petition is granted," "[t]he combined §§8/9 filing is accepted," and "[t]he registration is renewed and the USPTO's records will be updated accordingly."  (JA22 ¶ 95, JA45.)

## IV. THE DISTRICT COURT HELD THAT THE USPTO'S DECISION TO RENEW AN EXPIRED TRADEMARK REGISTRATION IS UNREVIEWABLE.

Bacardi brought this lawsuit seeking judicial review of the Commissioner's January 13, 2016 decision to grant Cubaexport's ten-year-old petition and renew its registration, pleading one claim under the APA and one under the *ultra vires* doctrine.  Specifically, Bacardi claims that the USPTO exceeded its statutory authority and otherwise acted in an arbitrary and capricious manner by permitting deficiencies to be corrected a decade beyond "the time prescribed after notification of the deficiency," 15 U.S.C. § 1059(a), and thereby purporting to renew a trademark registration that had long ago expired as a matter of law.  Bacardi asked the District Court to set aside this unlawful agency action.

The USPTO moved to dismiss Bacardi's Complaint for lack of subject matter jurisdiction.  (JA48.)  The District Court granted the motion on the basis that the language and structure of the Lanham Act preclude judicial review of the agency's action.  (JA55.)

The District Court began by asserting that Bacardi's "Prayer for Relief asks for a remedy through cancellation of Cubaexport's registration of the HAVANA CLUB mark," which the District Court considered the only possible relief that could "redress the alleged injury."  (JA51-52.)  For that reason, the District Court held that Bacardi's action "is a cancellation proceeding defined under 15 USC

§ 1064." (JA52.)  The District Court did not quote the Complaint's Prayer for Relief, which nowhere requests cancellation.  Rather, the Prayer for Relief asks the District Court to "set aside the decision of the Director of the PTO," declare that Cubaexport's registration has "expired," and order the PTO to comply with its obligation to remove the expired registration from the registry.  (JA26 ¶ 113.)  The District Court also did not address the USPTO's own distinction between "cancellation" and "expiration," and the agency's acknowledgment that expiration happens automatically by operation of law.  (JA20-21 ¶ 88, JA37.)

Based on this premise, the District Court reasoned that a "cancellation proceeding is an '*inter partes* proceeding'" under the Lanham Act, and that "[t]he language of the Lanham Act expressly precludes a civil action (as it is an *inter partes* proceeding) from being filed against the Director of the USPTO."  (JA56 (citing 15 U.S.C. § 1071(b)(2)).)  From there, the District Court inferred that "the named Defendant in this case cannot be sued based on the plain language of the Lanham Act."  (JA52-53.)  The District Court further reasoned that the existence of "an adversarial process to resolve the dispute of a trademark's registration"—*i.e.*, cancellation proceedings—suggests that "Congress intended for competing claims over the registration of a trademark to be resolved through an adversarial process," such that "the structure of the Lanham Act implies that the instant civil action is precluded as a means of judicial review."  (JA53-54.)

The District Court further noted that "Bacardi believes that they are foreclosed from an adequate remedy" for the USPTO's unlawful renewal of Cubaexport's registration, but that "this does not change the finding of that *[sic]* judicial review has been precluded." The District Court added that "§ 704 of the APA creates judicial review based on the availability of a remedy, not the availability of a claim." (JA54.)

Finally, the District Court dismissed the *ultra vires* claim because "Bacardi has not shown they are deprived of an alternative remedy," pointing again to cancellation procedures as "a comprehensive scheme to challenge the ownership and registration of a trademark." (JA55.)

## SUMMARY OF ARGUMENT

Judicial review of the USPTO's decision to renew the expired HAVANA CLUB trademark registration is available under both the APA and the *ultra vires* doctrine. In holding otherwise, the District Court made numerous errors warranting reversal.

1. a. Undermining its entire decision, the District Court failed to meaningfully apply the strong presumption in favor of judicial review as required by the Supreme Court's and this Court's binding precedent. That strong presumption can only be overcome if the government meets its heavy burden of demonstrating that Congress expressly or impliedly precluded judicial review. In

making that determination, the District Court was required, but failed, to narrowly interpret all supposedly preclusive statutory language. Instead, the District Court turned the presumption on its head and strained to find preclusion where there was none.

b. The District Court held that Congress expressly precluded review of the USPTO's renewal decision by providing in section 1071(b) that the Director cannot be named in an *inter partes* proceeding under that subsection. But this interpretation finds no support in the statutory text. Congress knows how to preclude judicial review when it wants to by using explicit language of preclusion, such as referring to agency action as "final and nonappealable" or "not subject to review." But Congress did not use such language in section 1071(b), and the District Court erred in concluding otherwise. The whole purpose of section 1071 is to provide for judicial review of agency action, not to shield the agency from scrutiny. Moreover, Bacardi's lawsuit is brought under the APA, not section 1071(b), and therefore that subsection does not apply to this lawsuit. Finally, even section 1071(b) does not prohibit naming the Director in every civil action under that subsection as the District Court concluded. Where a party seeks to challenge certain agency action and there is no adverse party in interest according to USPTO records, the Director *must* be named. *See Shammas v. Focarino*, 784 F. 3d 219, 221 (4th Cir. 2015). Thus, section 1071(b) does not expressly preclude review of

Bacardi's claim.

c. The District Court also erred in finding implied preclusion based on the availability of cancellation proceedings by which Bacardi could challenge the HAVANA CLUB mark on various grounds. But as the Supreme Court and other courts have long held, the fact that Congress provided for judicial review of some agency action by some parties does not imply that it precluded other parties from seeking review of different agency actions. Moreover, cancellation procedures do not apply to this lawsuit because Bacardi does not seek to cancel the HAVANA CLUB registration—rather, it seeks to set aside unlawful agency action that purported to renew a registration that had already expired by operation of law. The USPTO itself recognizes the difference between cancellation and expiration. (JA37.) The District Court erred in conflating the two. Further, the administrative cancellation procedures of the Lanham Act are not available to challenge an improper renewal—a fact brushed aside by the District Court, but one which requires an especially forceful application of the presumption in favor of review. Without the ability to seek review of the USPTO's renewal decision in an administrative cancellation proceeding, those proceedings cannot possibly provide an adequate alternative remedy to an APA claim.

d. Relatedly, the District Court was wrong to conclude that the cancellation procedures provided Bacardi with an adequate alternative remedy for purposes of 5

U.S.C. section 704. The proper question is whether Bacardi has another forum for adjudication of its claim that the USPTO violated the Lanham Act by renewing an expired trademark registration. The answer to that question is no, and the District Court was wrong to conclude that cancellation proceedings in which Bacardi could not bring its claim that the agency exceeded its authority were a substitute for APA review.

2. The District Court also erred in dismissing the *ultra vires* claim on the ground that Bacardi could seek relief through the cancellation procedures of the Lanham Act, and thus there is an adequate alternative remedy. A cause of action for review of *ultra vires* agency action is available even where statutory language purports to prohibit judicial review. Moreover, the standard for *ultra vires* review in this Circuit is whether the plaintiff has another forum for adjudication of its specific claim that the agency violated a statutory provision—not, as the District Court held, whether it has another forum to seek similar relief by pursuing other claims. Here, Bacardi alleges that the USPTO renewed an expired registration without statutory authority and failed to carry out its ministerial record-keeping function. Therefore, if APA review is unavailable for any reason, the *ultra vires* doctrine is a backstop to prevent such unlawful agency action from going without judicial review.

The standard of review on this appeal from an order of the District Court granting a motion to dismiss for lack of subject matter jurisdiction is *de novo*. *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 369 (4th Cir. 2001). Where, as here, the defendant argues that the "complaint simply fails to allege facts up on which subject matter jurisdiction can be based[,] . . . all the facts alleged in the complaint are assumed to be true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

## ARGUMENT

## I. THE USPTO'S ACTION GRANTING RENEWAL OF AN EXPIRED TRADEMARK REGISTRATION IS REVIEWABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT.

This should have been a straightforward APA case. On January 13, 2016, the Commissioner of Trademarks took final "agency action," 5 U.S.C. § 702, when she granted Cubaexport's "Petition to Director," "accepted" the filing of Cubaexport's renewal application, and ordered that its HAVANA CLUB "registration is renewed." (JA22 ¶ 95, JA45.) Bacardi is "aggrieved" by that agency action, 5 U.S.C. § 702, because but for that renewal, it could pursue its own registration of the HAVANA CLUB trademark. (JA22 ¶ 96, JA51.) And Bacardi claims that the USPTO's action was "not in accordance with law," "in excess of [its] statutory . . . authority," and "arbitrary [and] capricious," 5 U.S.C. § 706(2), because Cubaexport failed to pay the required renewal fee within the time

prescribed by the Lanham Act.  The registration therefore expired by operation of law, and the USPTO had no discretion to grant renewal or do anything but carry out its "ministerial record-keeping function," (JA37-38), to remove the expired registration from the Registry.[5]

Yet the District Court dismissed the action without even considering whether the USPTO complied with the law, finding that judicial review was precluded by the Lanham Act.  To support its view, all the District Court could point to was an inapposite statutory provision that does not purport to preclude review of anything and a strained inference of preclusion drawn from the existence of cancellation procedures that do not apply to Bacardi's claim that the USPTO improperly granted renewal of an expired registration.  That is not nearly enough to overcome the strong presumption of reviewability and support a conclusion that the agency action challenged here is immune from judicial review.  The District Court's order must therefore be reversed.

### A.    There Is A "Strong Presumption" In Favor Of Judicial Review Which The Agency Bears A "Heavy Burden" To Overcome.

The Supreme Court has long recognized a "strong presumption that Congress intends judicial review of administrative action."  *Bowen*, 476 U.S. at

---

[5]    Bacardi further claims that the USPTO's action was arbitrary and capricious because it acted contrary to its own regulations, and because it changed positions without offering a reasoned explanation for, or even acknowledging, the change.  (JA24-25 ¶¶ 106-08.)

670; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (noting "Congress's evident intent when enacting the APA to make agency action presumptively reviewable" (citation omitted)).  As the Supreme Court explained, "[w]e ordinarily presume that Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command." *Bowen*, 476 U.S. at 681.  That is because "Congress rarely intends to prevent courts from enforcing its directives to federal agencies." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (citing *Bowen*, 476 U.S. at 670).  Otherwise, the Supreme Court warned, "statutes would in effect be blank checks drawn to the credit of some administrative officer or board." *Bowen*, 476 U.S. at 670 (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).  Recognizing that "legal lapses and violations occur, and especially so when they have no consequence," the Supreme Court has resisted the notion that "compliance with the law would rest in the [agency's] hands," which is "why this Court has so long applied a strong presumption favoring judicial review of administrative action." *Mach Mining*, 575 U.S. at 488-89; *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (same).

It is exactly these types of "legal lapses and violations" that the APA is designed to redress.  As the Supreme Court recently observed with respect to the

same agency seeking immunity from review here, "[i]f a party believes the Patent Office has engaged in 'shenanigans' by exceeding its statutory bounds, judicial review remains available consistent with the Administrative Procedure Act." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018); *see also Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275 (2016) ("[N]or does our interpretation [of the America Invents Act] enable the [USPTO] to act outside its statutory limits. . . . Such 'shenanigans' may be properly reviewable . . . under the Administrative Procedure Act . . . .").

Thus, "judicial review of . . . administrative action is the rule, and nonreviewability an exception which must be demonstrated." *Barlow v. Collins*, 397 U.S. 159, 166 (1970). To demonstrate it, a government agency must "carry[] the 'heavy burden' of showing that the statute's 'language or structure' forecloses judicial review." *Salinas v. U.S. R.R. Ret. Bd*, 141 S. Ct. 691, 698 (2021). "[P]reclusion of judicial review . . . is not lightly to be inferred." *Barlow*, 397 U.S. at 166. It requires "'clear and convincing' indications, drawn from 'specific language,' 'specific legislative history,' and 'inferences of intent drawn from the statutory scheme as a whole,' that Congress intended to bar review." *Cuozzo Speed Techs.*, 579 U.S. at 273. As this Court has explained, exceptions to judicial review are "narrow," and "courts will decline to review agency actions only upon a showing that Congress clearly intended to restrict access to judicial review." *Ohio*

*River Valley Env't Coal., Inc. v. Kempthorne*, 473 F.3d 94, 101 (4th Cir. 2006).

Preclusion of review may be "express or implied," *Barlow*, 397 US at 165, but either way Congress's intent must be unequivocal. If the "statutory provision is reasonably susceptible to divergent interpretation," courts must "adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quotation omitted); *see also Obioha v. Gonzales*, 431 F.3d 400, 405 (4th Cir. 2005) (stating that a "narrower reading [of jurisdiction-stripping language] is appropriate" where "language is equally susceptible to a more narrow interpretation"); *Am. Clinical Lab'y Ass'n v. Azar*, 931 F. 3d 1195, 1205 (D.C. Cir. 2019) ("Even where . . . a statutory provision expressly prohibits judicial review, the presumption applies to dictate that such a provision be read narrowly."); *United States v. Dohou*, 948 F.3d 621, 626 (3d Cir. 2020) ("To displace our presumption in favor of judicial review, Congress must speak clearly.").

Although the District Court paid lip-service to this presumption, it did not meaningfully apply it. The District Court did not acknowledge the agency's "high burden" of demonstrating preclusion, much less hold the agency to that burden. It did not recognize that indications of preclusion must be "clear and convincing," much less find a clear and convincing demonstration of preclusive intent in this

case.  Instead, the District Court misinterpreted the Lanham Act and strained to infer preclusion when other inferences of congressional intent were at least as plausible.  For the reasons explained below, the statutory text and structure do not support the District Court's conclusion at all, and they certainly do not support preclusion so clearly that they overcome the strong presumption favoring judicial review.

### B.    Section 1071(b)(2) Does Not Unambiguously Expressly Preclude Judicial Review Of The Agency's Unlawful Renewal Of An Expired Trademark.

When Congress wishes to preclude judicial review, it knows how to make itself clear by using "unambiguous and comprehensive" language of preclusion. *Lindahl v. Off. of Pers. Mgmt.*, 470 U.S. 768, 779-80 (1985).  Elsewhere in the Lanham Act, for example, Congress allowed any person to request an *ex parte* expungement or reexamination of a trademark registration on the grounds that the mark has not been used in commerce, and provided that "[a]ny determination by the Director whether or not to institute" such proceedings "shall be *final and non-reviewable*."  15 U.S.C. §§ 1066a(c)(3), 1066b(d)(3) (emphasis added).  No such language exists in the Lanham Act regarding the Director's decision of whether to renew a trademark registration.  And even if it did, the Supreme Court has held that such language still "does not 'enable the agency to act outside its statutory limits'" without APA review.  *SAS Inst.,* 138 S. Ct. at 1359 (interpreting the similarly

worded America Invents Act which provides that certain decisions of the Director are "final and nonappealable").[6]

The Supreme Court has identified other statutory language that also demonstrates express preclusion—none of which appears anywhere in the Lanham Act. In *Lindahl*, for example, the Supreme Court pointed to two statutes that precluded judicial review. 470 U.S. at 780 n.13. The first provided that certain veterans' benefits decisions "shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise."[7] *Id.* (quoting 38 U.S.C. § 211(a)). The second provided that "[t]he action of the Secretary [of Labor] or his designee in allowing or denying a payment under this subchapter is (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." *Id.* (quoting 5 U.S.C. § 8128(b)). A four-Justice concurrence in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,

---

[6]    Moreover, any preclusive language must be interpreted narrowly. *See Lindahl*, 470 U.S. at 791 (holding that statutory language stating that "factual determinations" are "final and conclusive and not subject to review" does not prohibit review of the standards and procedures used by the agency to reach those factual determinations).

[7]    Even this statute was later interpreted narrowly by the Supreme Court, which concluded that it did *not* preclude judicial review of a claim that the decision made by the agency was discriminatory because such claim did not arise under the statute. *Traynor v. Turnage*, 485 U.S. 535, 543-45 (1988).

139 S. Ct. 2051, 2061 (2019) (Kavanaugh, J., concurring), cited numerous other examples, such as the Clean Water Act, 33 U.S.C. § 1369(b)(2) (certain agency orders "shall not be subject to judicial review in any civil or criminal proceeding for enforcement"), CERCLA, 42 U.S.C. § 9613(a) (same), and the Clean Air Act, 42 U.S.C. § 7607(b)(2) (same).

In contrast to these examples of express preclusion, nowhere does the Lanham Act say that a decision to grant renewal of a trademark registration is "final and non-reviewable," "final and nonappealable," "final and conclusive," "not subject to review," or anything similar. Instead, to conclude that the statute expressly precludes review, the District Court relied on 15 U.S.C. section 1071(b)(2)—a provision that does not preclude review of anything. The District Court's interpretation of that provision bears no relation to the statutory text and would fail even without the presumption favoring judicial review.

Far from restricting judicial review, 15 U.S.C. section 1071—entitled "Appeal to courts"—creates a special mechanism *for* judicial review in certain circumstances. Subsection (a) permits an "appeal to the United States Court of Appeals for the Federal Circuit" in a range of circumstances, including, but not limited to, where "[a]n applicant for registration of a mark" or a "party to a cancellation proceeding" is "dissatisfied with the decision of the Director or Trademark Trial and Appeal Board." 15 U.S.C. § 1071(a)(1). Subsection (b) then

provides that any "person authorized by subsection (a)" to appeal to the Federal Circuit may instead "have remedy by a civil action" in a district court. *Id.* § 1071(b)(1). Subsection (b) provides that "[t]he Director shall not be made a party to *an inter partes proceeding under this subsection*, but he shall be notified of the filing of the complaint by the clerk of the court in which it is filed and shall have the right to intervene in the action." *Id.* § 1071(b)(2) (emphasis added). In interpreting this provision to mean that "the Lanham Act expressly precludes a civil action (as it is an *inter partes* proceeding) from being filed against the Director of the USPTO," (JA53), the District Court made three critical errors.

*First*, section 1071(b)(2) does not bar judicial review of USPTO action at all. It merely addresses whether the Director may be *named* as a party in certain types of actions. But the whole purpose of section 1071 is to provide for judicial review of agency action, not to shield the agency from scrutiny. Even in the types of cases where the Director cannot be named as a party, his or her decision *will* be reviewed by a court. *See*, *e.g.*, *Durox Co. v. Duron Paint Mfg. Co.*, 320 F.2d 882, 883 (4th Cir. 1963) ("Plaintiff's complaint under [section 1071] asked the district court to reverse a decision of the Patent Office Trademark Trial and Appeal Board and to direct the Commissioner of Patents to issue to plaintiff its requested registration."); *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 110 F.3d 234, 236 (4th Cir. 1997) (noting that in a prior proceeding, "the district court initially

ordered the Commissioner of the Patent and Trademark Office to cancel its registration"); *Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 815 (4th Cir. 2001) ("[AT&T] filed a counterclaim seeking a declaratory judgment that AOL's marks are not valid trademarks and requesting an order directing the Patent and Trademark Office to cancel the registration . . . ."). Indeed, the statute requires the Director to be "notified" of the complaint in such cases and given "the right to intervene in the action" to defend the agency's action. *See*, *e.g., Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016) (noting that the USPTO "intervened to defend the TTAB's decision" in a section 1071(b) action).

*Second*, the restriction on naming the Director is expressly limited to an "*inter partes* proceeding *under this subsection*." 15 U.S.C. § 1071(b)(2) (emphasis added). But Bacardi's lawsuit is not a "proceeding under this subsection"—rather, it is a proceeding under the APA (an entirely separate statute) and the *ultra vires* doctrine. (JA8 ¶ 18.) The plain text of section 1071(b)(2) does not purport to limit naming the Director in any proceedings under *other* sections or other statutes, and the District Court erred in interpreting it otherwise. Section 1071 does not speak at all to review of claims that a registration renewal was unlawfully granted, so any purported limitation of review "under" a subsection of section 1071 cannot be relevant to Bacardi's lawsuit.

As explained below, the fact that a statute provides for judicial review by

some parties in some circumstances does not imply congressional intent to foreclose judicial review to other parties in other circumstances under the APA. (*See* Argument § I.C.1, *infra*.)  Indeed, in discussing the interplay between the APA and another review statute, the Supreme Court rejected the exact error the District Court made here.  In *Match-E-Be-Nash-She-Wish*, the government argued that an APA suit fell within the scope of the Quiet Title Act and (because it involved Indian lands) within that statute's preclusion of review.  But the government could "reach that result only by neglecting key words in the relevant provision"—that "'the United States may be named as a party defendant *in a civil action under this section* to adjudicate a disputed title to real property in which the United States claims an interest.'"  567 U.S. at 221 (quoting 28 U.S.C. § 2409a(a) (emphasis in original)).  Because the APA action at issue was not brought "under this section," the Quiet Title Act and its limitations on review had nothing to say, and so the APA applied.  *Id.* at 221-24.  The same is true here.

*Third*, section 1071(b)(2) does not even bar naming the Director in every civil action under that subsection.  Rather, the restriction is limited to "an *inter partes* proceeding," 15 U.S.C. § 1071(b)(2), where there is an "adverse party," defined as a "party in interest as shown by the records of the United States Patent and Trademark Office," *id.* § 1071(b)(4).  As this Court explained, when there is no adverse party in interest shown by USPTO records—for example, where an

applicant seeks review of the agency's denial of registration—the Director *must* be named: "[i]f [the applicant] elects to proceed in a district court [under section 1071(b)] and no adverse party opposed his application before the [USPTO], the applicant *must name the Director of the PTO as a defendant*." *Shammas*, 784 F.3d at 221 (emphasis added) (citing 15 U.S.C. § 1071(b)(3)); *see also Booking.com*, 140 S. Ct. at 2303 ("Booking.com sought review in the U.S. District Court for the Eastern District of Virginia" in a civil action against the USPTO under "§ 1071(b)"). Thus, it is simply not true that a civil action against the Director inherently "is an *inter partes* proceeding," (JA53), within the meaning of section 1071(b)(2). And if the Director or the agency itself can be named in a suit under section 1071(b) (as they can be and often are), the Director and agency can surely be named in an APA action. The District Court was wrong to assume in a parenthetical that any civil action related to a trademark registration "is an *inter partes* proceeding" subject to the limitation on naming the Director. (JA53.)

In short, it is simply not the case that the USPTO, or its Director, "cannot be sued based on the plain language of the Lanham Act." (JA53.) Section 1071 anticipates and provides for a special form of review of agency action in certain circumstances, expressly permits suing the agency directly in some of those circumstances, and nowhere hints that agency actions not addressed in section 1071 are unreviewable under the APA. And even if section 1071(b)(2) were

"reasonably susceptible to divergent interpretation," the District Court was required to choose the interpretation consistent with the presumption "that executive determinations generally are subject to judicial review." *Guerrero-Lasprilla*, 140 S. Ct. at 1069.

### C. The Structure Of The Lanham Act Does Not Clearly Imply That Congress Intended To Permit The USPTO To Violate The Lanham Act's Renewal Provisions Without Review.

In addition to misinterpreting section 1071(b)(2) as expressly precluding review, the District Court erroneously concluded that preclusion of review should be implied on the basis that "the structure and language of the Lanham Act demonstrates it is 'fairly discernible' that Congress intended for competing claims over the registration of a trademark to be resolved through an adversarial process." (JA53 (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)).) To draw this inference, the District Court relied on two purported features of the Lanham Act. First, the District Court believed that "Congress did not allow for challenges to another party's registration by filing civil suit against the USPTO." (JA54.) Second, the District Court thought that Congress had "provide[d] an alternative method to resolve the exact type of dispute in this current matter," *i.e.*, the Lanham Act's "detailed procedure" for cancellation proceedings. (JA54.) These inferences are unsupportable, and not nearly compelling enough to overcome the strong presumption favoring review.

Nowhere did Congress *disallow* judicial review of a USPTO decision granting renewal of an expired trademark in contravention of the Lanham Act. That situation is simply not addressed in the Lanham Act's cancellation procedures, a fact admitted by the USPTO itself. *See Galleon S.A. v. Havana Club Holding, S.A.*, Cancellation No. 92024108, 2004 WL 199225, at *14 (T.T.A.B. Jan. 29, 2004) ("improper renewal of a registration" not enumerated in cancellation provisions). That means that a party aggrieved by unlawful agency action *renewing* an expired trademark registration cannot take advantage of the Lanham Act's special review provisions, which are *more favorable to the challenger* than review under the APA. Not providing for that more favorable form of review under the Lanham Act hardly implies a congressional intent to insulate unlawful agency action from any review at all. The more natural inference is simply that Congress did not anticipate the unusual manner in which the agency here disregarded its statutory obligations—exactly why the backstop of APA review exists. Indeed, if Bacardi cannot challenge the USPTO's unlawful action, no one can—a situation that courts have held requires a particularly muscular application of the presumption favoring review.

### 1. The Lanham Act's "Appeal to Courts" Provision Does Not Clearly Imply An Intent To Preclude Review.

The District Court concluded that review was impliedly barred because "Congress did not allow" a "civil suit against the USPTO" in these circumstances.

(JA54.)  To the extent that conclusion is based on section 1071(b)(2)'s restriction on naming the Director in certain types of lawsuits, that is wrong for the reasons explained above.  To the extent the District Court instead was inferring preclusion from the fact that section 1071 does not specifically provide for review of agency action granting unlawful renewals, that inference cannot properly be drawn.

The Supreme Court and other courts have squarely rejected the notion that congressional grant of review in some circumstances implies a preclusion of review in others.  The Supreme Court has repeatedly cautioned that "[t]he mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others.  The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent."  *Abbott Laby's v. Gardner*, 387 US 136 (1967); *Bowen*, 476 U.S. at 674 (quoting *Abbott*); *Lindahl,* 470 U.S. at 782 (same); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 643-44 (2002) (same).  Indeed, the Supreme Court has specifically rejected the argument that "in authorizing one person to bring one kind of suit seeking one form of relief, Congress barred another person from bringing another kind of suit seeking another form of relief."  *Match-E-Be-Nash-She-Wish*, 567 U.S. at 221-24.

The Supreme Court has further explained that "if the express provision of judicial review in one section of a long and complicated statute were alone enough

to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all." *Sackett*, 566 U.S. at 129. As the D.C. Circuit has similarly held, it "borders on the incredible" to argue that the recognition of one type of action "evidences a clear and convincing intent to exclude all other judicial relief." *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 807 (D.C. Cir. 1983).

Similarly here, the fact that the Lanham Act does not specifically provide for judicial review of the Director's decision to grant a renewal application does not imply that Congress intended to preclude review under the APA. "[J]udicial review will not be precluded on the sole ground that specific procedures for judicial review of a particular agency action are not spelled out in a statute." *Allied Corp. v. U.S. Int'l Trade Comm'n*, 850 F.2d 1573, 1579 (Fed. Cir. 1988).

Any inference of preclusion is uniquely improper here. Section 1071 is not like the APA—it creates a form of review of agency action that is non-deferential and allows new evidence to be introduced. Both the Supreme Court and this Court have held that under section 1071(b) (and its parallel provision in the Patent Act, 35 U.S.C. section 145), the district court "must make its own findings *de novo* and does not act as the 'reviewing court' envisioned by the APA." *Kappos v. Hyatt*, 566 U.S. 431, 438 (2012) ("We reject the Director's contention that background principles of administrative law govern the admissibility of new evidence and

require a deferential standard of review in a § 145 proceeding."); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014) (applying *Kappos* to section 1071); *Booking.com*, 140 S. Ct. at 2303 (explaining that section 1071(b) provides "a mode of review that allows [the plaintiff] to introduce evidence not presented to the agency").

Thus, a civil action under section 1071 actually provides less deferential—indeed, entirely *de novo*—judicial review of agency action as compared to an action under the APA. The natural inference is that, by limiting section 1071 to certain specified circumstances, parties who fall outside those circumstances cannot take advantage of the special, non-deferential form of agency review provided by that section. But it strains both logic and precedent to infer, as the District Court did here, that by providing for an especially liberal grant of judicial review of certain USPTO decisions by certain aggrieved individuals via section 1071(b), Congress intended to completely preclude all judicial review by anyone else in any other circumstances. It is more likely, and certainly plausible, that Congress intended section 1071(b) to provide *de novo* review in the circumstances described and to leave all other situations—like Bacardi's claim of unlawful renewal of an expired registration—to the "background principles of administrative law," *Kappos*, 566 U.S. at 438, governing APA review. This interpretation is buttressed by the fact that, when that was not its intent, Congress expressly

provided otherwise. *See, e.g.*, 15 U.S.C. §§ 1066a, 1066b (certain Director decisions are "final and non-reviewable").

## 2. The Lanham Act's Administrative Cancellation Procedures Do Not Clearly Imply An Intent To Preclude Review.

The District Court erroneously concluded that Congress "intended for competing claims over the registration of a trademark to be resolved through an adversarial process" because the Lanham Act provides a procedure for parties to petition for cancellation of a registration. (JA53.) The existence of administrative cancellation procedures, however, is not clear and convincing evidence that Congress intended to preclude review of an entirely separate agency action—the granting of a petition by a registrant to renew a registration that had long ago expired as a matter of law. The District Court erred in concluding otherwise for three reasons.

*First*, this lawsuit does not seek cancellation of the HAVANA CLUB registration. Cancellation involves a claim that "the registrant is not entitled under law to maintain the registration" because there is a "statutory ground which negates the [registrant's] right to the subject registration." *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998). Bacardi's claim here, by contrast, is that the USPTO exceeded its statutory authority by renewing a trademark registration that had already expired by operation of law a decade earlier due to the applicant's failure to pay the renewal fee in the time prescribed by law. (JA21 ¶ 90.) Bacardi,

therefore, does not seek to *cancel* a registration; rather, it seeks to set aside unlawful agency action that purported to grant renewal of an already *expired* registration.

Before seeking to insulate from review its unlawful action, the USPTO itself recognized the difference between cancellation and expiration. The agency explained that the "statutory requirements of maintenance [section 8] and renewal [section 9] are distinct, as are the consequences of an untimely or unacceptable filing. . . . [I]f the requirements of §8 are not met, the Director is required by that provision to cancel the registration as of the end of its term. If the requirements of §9 are not met, the registration expires as of the end of its term." (JA20-21 ¶ 88, JA37.) Bacardi seeks to set aside unlawful agency action that purported to renew the HAVANA CLUB registration. If successful, the registration will be expired, not cancelled. The District Court's conflation of the two cannot be reconciled with the text of the Lanham Act or the USPTO's own prior understanding of those provisions.

For similar reasons, the District Court was also wrong to conclude that Bacardi's "Prayer for Relief asks for a remedy through cancellation of Cubaexport's registration," and the only remedy the District Court could "offer to redress the alleged injury [to Bacardi] would be the cancellation of Cubaexport's trademark." (JA51-52.) As to the Prayer for Relief, the District Court was simply

wrong: it does not mention cancellation, and the District Court had no basis to read a request for cancellation into the complaint. (*See* Statement of the Case § IV, *supra*.) Nor is cancellation the only possible remedy that could redress Bacardi's injury. Bacardi's injury can be redressed by the District Court doing what the APA authorizes it to do: set aside the unlawful agency action that purported to renew an expired registration, declare the registration expired by operation of law (just as the Examiner did ten years ago before being erroneously overridden by the Commissioner) (JA18 ¶¶ 74-76, JA28), and order the agency to carry out its "ministerial record-keeping function" of updating the registry. (JA37.) This would unquestionably redress Bacardi's injury, as the USPTO told Bacardi that its application to register the same mark would not be granted because Cubaexport's mark was still on the registry. (JA9-10 ¶ 24.)

*Second*, the fact that the cancellation process is irrelevant to Bacardi's claim is apparent from the fact that the agency action at issue did not originate from a cancellation proceeding. Rather, the agency proceeding at issue involved the Examiner's rejection of Cubaexport's renewal application for failure to meet statutory requirements and Cubaexport's petition to the Director asking the agency to grant renewal anyway. Bacardi challenges the Director's January 13, 2016 decision granting Cubaexport's petition and renewing its long-expired HAVANA CLUB registration. Thus, the agency was not deciding a petition for cancellation,

or any other "competing claim over the registration" of a mark. (JA53.) Bacardi claims that by granting Cubaexport's petition and renewing a trademark registration it was not authorized to renew, the USPTO broke the law. The APA and the strong presumption of judicial review require the District Court to hear Bacardi's claim that this was unlawful agency action that must be set aside.

*Third*, if any inference is to be drawn from the Lanham Act's cancellation and judicial review provisions, it is that Congress did *not* intend any USPTO action involving "competing claims over the registration" of a mark to be wholly beyond the reach of the judiciary. The cancellation provisions permit cancellation to be sought on any ground within five years of registration, followed by appeal or a civil action. 15 U.S.C. §§ 1064, 1071. That provision grants a five-year period in which any defect in a registration can be challenged. *Id.* §§ 1064(1-2). It is only after those five years that the statute limits the grounds on which cancellation can be sought. *Id.* §§ 1064(3-6). This Court has described section 1064 "as a kind of statute of limitations for actions seeking cancellation of marks registered for more than five years." *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 9 F.3d 1091, 1096 (4th Cir. 1993). A statute of limitations bars untimely actions that could have been brought earlier—it does not prevent claims from *ever* being brought.

That, however, would be the consequence of incorrectly treating Bacardi's claim as a time-barred cancellation request. A defective renewal, by definition,

happens more than five years after registration—the Lanham Act does not even permit renewal applications until "1 year before the end of each successive 10-year period for which the registration was issued or renewed." 15 U.S.C. § 1059(a). If Bacardi's claim were treated as a cancellation request, but not one covered by the grounds specified in section 1064(3), the instant that claim arose it would be barred by a "kind of statute of limitations," *Shakespeare Co.*, 9 F.3d at 1096. That would make no sense. The much more sensible conclusion is that Bacardi's claim is what Bacardi's complaint says it is: a claim to set aside agency action granting renewal of an expired registration that the agency was not authorized to grant.

In not addressing this scenario in either the Lanham Act's cancellation or "Appeal to Courts" provisions, Congress may well not have focused on a situation in which the agency would blatantly violate statutory constraints by granting renewal of an expired registration. Such unanticipated circumstances are the reason the APA's broad grant of judicial review exists—not a reason to infer a clear intent to preclude judicial review. As other circuits have held, the fact "[t]hat Congress may not have anticipated" a unique situation "is not evidence that Congress affirmatively decided to revoke the right to judicial review otherwise provided by the APA." *ACLU v. Clapper*, 785 F.3d 787, 805 (2d Cir. 2015); *Buchanan v. Apfel*, 249 F.3d 485, 490 (6th Cir. 2001) (no preclusion where "[t]he language of" the statute "indicates that Congress never contemplated a situation

where someone other than a party pursuing entitlement benefits would seek review of a colorable claim that the Commissioner engaged in a statutory or constitutional violation").

### 3. The Lack Of Other Viable Means Of Review Strongly Counsels Against A Finding Of Preclusion.

The Supreme Court is especially loath to infer preclusion of judicial review where the parties injured by agency overreach would be left without any remedy at all, and the agency would be free to violate its statutory requirements with impunity. "[U]nless members of the protected class may have judicial review the statutory objectives might not be realized." *Barlow*, 397 U.S. at 167. But this is exactly what the District Court did in this case, because if Bacardi cannot seek judicial review of the USPTO's decision to renew the HAVANA CLUB registration, then no one can, and the USPTO's unlawful action will be immune from even being questioned.

Other Courts of Appeals have recognized this important consideration. "[W]hether Congress has extended a cause of action to a party whose interests are aligned with those of a party seeking to sue" is "critical," and "an important consideration in interpreting and applying" Supreme Court precedent on implied preclusion. *ACLU*, 785 F.3d at 806; *accord Farmers Union Milk Mktg. Coop. v. Yeutter*, 930 F.2d 466, 474 (6th Cir. 1991); *see also SourceAmerica v. U.S. Dep't of Educ.*, 368 F. Supp. 3d 974, 990 (E.D. Va. 2019) ("Congressional intent to

preclude judicial review is less likely to be found—and thus greater evidence of it is needed—where preclusion would prevent parties likely to be impacted by agency action from having their interests represented during judicial review."), *aff'd in part and vacated in part sub nom. Kansas ex rel. Kan. Dep't for Child. & Fams. v. SourceAmerica*, 826 F. App'x 272 (4th Cir. 2020) (declining to review the preclusion question as unpreserved). This is because unless some interested party is able to challenge agency action in excess of statutory authority, agencies would be free to engage in such "shenanigans" without consequence—exactly what the Supreme Court has warned against. *See SAS Inst.*, 138 S. Ct. at 1359.

The case relied on by the District Court—*Block*—actually demonstrates the error of the District Court's decision. In *Block*, the Supreme Court held that consumers of milk products could not sue the Secretary of Agriculture under the APA challenging the agency's milk pricing decisions because Congress set out a detailed scheme for setting milk prices through a collaborative process between the Secretary, handlers, and producers—but not consumers—of milk products. 467 U.S. at 346-47. Central to the Supreme Court's decision was the fact that handlers could adequately represent the interests of consumers in the administrative process because they were aligned in interest and would therefore ensure that the agency followed the law: "Handlers have interests similar to those of consumers. Handlers, like consumers, are interested in obtaining reliable supplies of milk at

the cheapest possible prices. Handlers can therefore be expected to challenge unlawful agency action and to ensure that the statute's objectives will not be frustrated." *Id.* at 352 (internal quotations omitted).

In the present case, in contrast, no other party is aligned in interest with Bacardi to challenge the unlawful renewal of Cubaexport's trademark registration. Obviously, Cubaexport has no interest in challenging the unlawful agency action— it *induced* the unlawful agency action by filing a Petition to Director asking the agency to grant a renewal it was not authorized to grant. And the Lanham Act does not permit Bacardi to challenge the unlawful agency action as part of an administrative cancellation proceeding—a fact acknowledged by the USPTO, the Supreme Court, and this Court. *Bonehead Brands, LLC v. Direct Impulse Design*, No. 9206833, 2019 WL 646461, at *4 (T.T.A.B. Feb. 13, 2019) ("[A]n allegation . . . that the USPTO should not have renewed a registration[] is not an available ground for cancellation under Section 14(3)."); *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 196-99 (1985) (holding that the grounds for cancellation are limited to those enumerated in the statute); *Shakespeare*, 9 F.3d at 1097-99 (same). In fact, the USPTO has specifically taken that position with regard to the very cancellation proceeding Bacardi commenced to challenge the HAVANA CLUB registration: "[s]ection 14(3) of the Trademark Act precludes a challenge to the validity of a registration more than five years old on the ground of 'improper

renewal of a registration.'" *Galleon S.A.,* 2004 WL 199225, at *14. Thus, without APA review, the agency would be free to dole out trademark renewals in violation of the law without fear of judicial oversight. There is no clear indication in the statute that this is what Congress intended, and it weighs heavily against a finding of preclusion.

The District Court simply ignored this point. It noted, and did not dispute, that "Bacardi believes that they are foreclosed from an adequate remedy for what they have alleged is an improper renewal of the HAVANA CLUB trademark." (JA54.) The District Court merely responded with a conclusory assertion that "this does not change the finding of that *[sic]* judicial review has been precluded." (JA54.) In other words, the District Court viewed the lack of any remedy as irrelevant to the question of whether Congress clearly intended to preclude review. Yet as explained above, that is wrong—as the Supreme Court and other Circuits have recognized, the fact that no other form of review is available is a powerful indication that Congress did not intend to preclude review. The District Court's strained inferences from the structure of the Lanham Act cannot overcome this strong indication counseling against preclusion of review.

**D.  Bacardi Has No Other Adequate Remedy In Court For The USPTO's Unlawful Action Granting Renewal Of An Expired Registration.**

In passing, the District Court asserted that by providing for cancellation, "the

Lanham [A]ct has created a procedure to challenge the registration of the HAVANA CLUB trademark and offer the remedy that Bacardi seeks." (JA54.) It is not entirely clear if the District Court meant this as a reason for concluding that review is precluded by the Lanham Act, or as an alternative holding that APA review is unavailable because there is an "other adequate remedy in a court," 5 U.S.C. § 704. To the extent it is the latter, the District Court again erred.

As Bacardi explained, the USPTO and the courts all agree that improper renewal is not a basis on which a party may petition to cancel a trademark registration. (*See* Argument § I.C.3, *supra*.) The District Court did not disagree, but instead held that "this does not change the finding [] that judicial review has been precluded." (JA54.) The District Court concluded that "§ 704 of the APA creates judicial review based on the availability of a remedy, not the availability of a claim." (JA54.) This reasoning, which does not cite a single legal authority and ignores the law on adequate remedies, is incorrect.

The APA provides for review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The purpose of this provision is "simply to avoid duplicating previously established special statutory procedures for review of agency actions." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)). It is an "exception" that "should not be construed to defeat the central purpose of providing a broad

spectrum of judicial review of agency action." *Bowen*, 487 U.S. at 903; *Darby*, 509 U.S. at 147 (courts must not "transform [section 704] from a provision designed to 'remove obstacles to judicial review of agency action' . . . into a trap for unwary litigants").

In determining whether an adequate remedy exists, the APA's "generous review provisions must be given a hospitable interpretation." *Bowen*, 487 U.S. at 904 (citation and quotations omitted). As the Supreme Court has held, "doubtful and limited relief . . . is not an adequate substitute for [APA] review." *Id.* at 901; *see also Rollerson v. Brazos River Harbor*, 6 F.4th 633, 642 (5th Cir. 2021) (APA review is not precluded "if the very existence of an alternative remedy is doubtful"); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice (CREW)*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (same). "Where such uncertainty exists regarding the availability and nature of review[,] . . . APA review is not precluded by § 704." *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health*, 396 F.3d 1265, 1275 (D.C. Cir. 2005).

Review will thus be denied pursuant to section 704 only if there is "'clear and convincing' evidence of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Rollerson*, 6 F.4th at 642 (quoting *CREW*, 846 F.3d at 1245). Although adequate remedies need not be "identical" to the relief available under the APA, "the alternative remedy must actually result in a

determination of the underlying legal question." *Gonzalez Boisson v. Pompeo*, 459

F. Supp. 3d 7, 13 (D.D.C. 2020). Courts must "independently examine[] the[]

adequacy" of an alleged alternate remedy. *CREW*, 846 F.3d at 1245 (collecting

cases).

"The Supreme Court has repeatedly upheld an aggrieved party's prompt

access to the district court when it provides greater redress and broader opportunity

to develop a claim than is available in a more limited statutory scheme." *Chang v.

United States*, 327 F.3d 911, 923 (9th Cir. 2003). And an alternative is inadequate

where the adjudicator "cannot hear the sorts of claims at issue." *Id*. at 924. Thus,

it is not sufficient if the "critical issues" sought to be reviewed under the APA

cannot be raised or addressed in the alternative forum. *Id.* Indeed, this Court has

recognized that where the "alternative forms of relief suggested by the

[Government] would not afford the plaintiffs the complete relief they seek," the

alternatives are inadequate. *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014).

The Fifth Circuit's decision in *Rollerson* is also instructive. There, the Fifth

Circuit allowed an APA claim against an agency to proceed alleging failure to

remedy disparate-impact discrimination by a third-party, despite the fact that the

plaintiff could have sued the third-party directly for intentional (although not

disparate-impact) discrimination. "If Congress did not intend for private suits to

challenge disparate-impact discrimination, then it is difficult to see how it intended

for private suits to serve as an alternative remedy to APA review for disparate-impact discrimination." *Rollerson*, 6 F.4th at 644.  Importantly, the Fifth Circuit recognized that without APA review, the plaintiff "has no means of securing review of whether a funding recipient is violating disparate-impact regulations." *Id.*  Thus, it did not matter that the plaintiff could obtain the same remedy by bringing a different claim—what mattered was whether the plaintiff could adjudicate the specific claim it wanted to pursue.

The District Court's manufactured distinction between "the availability of a remedy" and "the availability of a claim," (JA54), exists nowhere in this extensive case law.  To the contrary, under binding circuit precedent, the question is whether the asserted alternative remedy provides "plaintiffs the *complete* relief they seek." *King*, 759 F.3d at 367 (emphasis added).  Yet the District Court necessarily found that cancellation proceedings do *not* provide Bacardi with the complete relief it seeks because "[a] renewal does not occur until more than five years after the initial registration, and the Lanham Act only allows for petitions for cancellation of marks that are more than five years old on a limited number of grounds."  (JA54.) Thus, Bacardi seeks judicial review to set aside USPTO action that unlawfully renewed an expired trademark registration, and it is undisputed that Bacardi cannot attain that relief in a cancellation proceeding.

Without APA review, Bacardi has no way to set aside or otherwise redress

the agency action that has injured it.  That is a paradigmatic situation where a party

cannot obtain complete relief elsewhere, and thus no other adequate alternative

remedy exists capable of precluding APA review.  To the extent the District Court

held otherwise, it was wrong.

## II.  THE USPTO'S ACTION GRANTING RENEWAL OF AN EXPIRED TRADEMARK REGISTRATION IS INDEPENDENTLY REVIEWABLE VIA AN *ULTRA VIRES* CLAIM.

For the reasons explained above, the USPTO's action granting renewal of an

expired trademark is reviewable under the APA.  But even if it were not, review

would still be available on Bacardi's *ultra vires* claim.  As this Court has held,

"when a claimant would have no other opportunity for meaningful and adequate

judicial review of a claim that an agency exceeded its statutory authority, a district

court may still consider such a claim, *even if a statute precludes judicial review in

general*."  *Hanauer*, 82 F.3d at 1309 (emphasis added).  Thus, "even when the

statutory language bars judicial review, courts have recognized that an implicit and

narrow exception to the bar on judicial review exists for claims that the agency

exceeded the scope of its delegated authority or violated a clear statutory

mandate."  *Id.* at 1307; *see also Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir.

2006) ("'[J]udicial review is available when an agency acts ultra vires,' even if a

statutory cause of action is lacking." (quoting *Aid Ass'n for Lutherans v. U.S.

Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003))); *Adamski v. McHugh*, 304 F.

Supp. 3d 227, 236-37 (D.D.C. 2015) (Jackson, J.) ("[A]n ultra vires claim . . . can be brought in federal court if a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision. This type of ultra vires claim derives from the contention that the agency has acted without the authority to do so, and it is based on the inherent power of the federal courts to reestablish the limits on executive authority through judicial review." (cleaned up)).

Here, Bacardi claims that the USPTO exceeded its statutory authority and violated a clear statutory mandate: section 9 of the Lanham Act provides a clear mandate for how a trademark registration may be renewed, which the agency ignored, granting renewal of a registration that had long ago expired under the plain terms section 9. That is precisely the sort of claim for which this Court has held that *ultra vires* review is available.

The District Court dismissed Bacardi's *ultra vires* claim without even considering whether the USPTO exceeded its delegated authority or violated a clear statutory mandate. Instead, the District Court held that "Bacardi has not shown they are deprived of an alternative remedy" because "there is a comprehensive scheme to challenge the ownership and registration of a trademark that Bacardi has already utilized by filing suit in the District of Columbia" (*i.e.*, Bacardi's civil action challenging the denial of its cancellation petition). (JA55.) Even if the same standard for adequate alternative remedies applied to APA and

*ultra vires* claims, there is no adequate remedy in court for the reasons explained above. In any event, however the District Court viewed the alternative remedy inquiry under the APA, the standard for an *ultra vires* claim is whether there is "meaningful and adequate judicial review of *a claim that an agency exceeded its statutory authority*." *Hanauer*, 82 F.3d at 1309 (emphasis added); *see also Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth.*, 844 F.3d 414, 422 (4th Cir. 2016) (finding meaningful review available because "Congress established a comprehensive system whereby Scottsdale can appeal an adverse FINRA decision to the SEC and a final adverse SEC decision in the appropriate court of appeals"); *accord Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F. 3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.) (finding *ultra vires* review available where "there is no alternative procedure for review of the statutory claim"). Thus, the question is whether Bacardi has another forum in which to raise the specific statutory claim Bacardi wishes to raise: that the USPTO's improper renewal of an expired registration exceeded its statutory authority.

Whether or not the Lanham Act's cancellation procedures are a "comprehensive scheme" in some respects, (JA55), both the District Court and the USPTO agreed that Bacardi *cannot* use those procedures to advance its statutory claim that the USPTO lacked authority to grant Cubaexport's registration renewal. (JA54); *Galleon S.A.*, 2004 WL 199225, at *14. Accordingly, this is plainly a case

where there is "no other opportunity for meaningful and adequate judicial review of a claim that an agency exceeded its statutory authority." *Hanauer*, 82 F.3d at 1309. The District Court's dismissal of Bacardi's *ultra vires* claim must therefore be reversed.[8]

## CONCLUSION

Bacardi respectfully requests that this Court reverse the District Court's decision and remand this case for further proceedings.

Dated:  New York, NY
       August 22, 2022

COVINGTON & BURLING LLP

David M. Zionts
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
(202) 662-5987

Respectfully submitted,

KELLEY DRYE & WARREN LLP

   */s/ Michael C. Lynch*
Michael C. Lynch
Damon Suden
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800

*Attorneys for Plaintiffs - Appellants*

---

[8]    Because this is "a court of review, not of first view," which ordinarily does not decide in the first instance questions not reached by the district court, *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006), Bacardi does not address here the merits of its claim that the USPTO exceeded its statutory authority.

## REQUEST FOR ORAL ARGUMENT

Appellants request oral argument in this case as it presents important issues concerning the availability of judicial review of agency action in excess of statutory authority under the Administrative Procedure Act and the *ultra vires* doctrine.  As such, this case implicates significant questions regarding judicial oversight of administrative action and the ability of parties aggrieved by agency action to seek a remedy in the federal courts.


Dated:  New York, NY
       August 22, 2022

COVINGTON & BURLING LLP

David M. Zionts
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
(202) 662-5987

*Attorneys for Plaintiffs - Appellants*

Respectfully submitted,

KELLEY DRYE & WARREN LLP

  */s/ Michael C. Lynch*
Michael C. Lynch
Damon Suden
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. __21-1659__    **Caption:** Bacardi & Company Limited and Bacardi USA, Inc. v. United States Patent
& Trademark Office, et al.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____12,590_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
__Microsoft Word_____ [*identify word processing program*] in
__Times New Roman size 14_____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) _Michael C. Lynch_____

Party Name _Bacardi & Company Limited and Bacardi USA, Inc._

Dated: _8-22-2022_____

# CERTIFICATE OF SERVICE

I certify that on  August 22, 2022   the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Michael C. Lynch
_____

Signature

August 22, 2022
_____

Date