**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1659**

───────────────

BACARDI & COMPANY LIMITED; BACARDI USA, INC.,

> Plaintiffs – Appellants,

v.

UNITED STATES PATENT & TRADEMARK OFFICE; KATHI VIDAL, in her
official capacity as the Director of the United States Patent and Trademark Office,

> Defendants – Appellees.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Liam O'Grady, Senior District Judge.  (1:21-cv-01441-LO-IDD)

───────────────

Argued:  March 7, 2023                                      Decided:  June 13, 2024

───────────────

Before RICHARDSON and RUSHING, Circuit Judges, and MOTZ, Senior Circuit Judge.

───────────────

Reversed and remanded by published opinion.  Judge Rushing wrote the opinion, in which
Judge Richardson and Senior Judge Motz joined.

───────────────

**ARGUED:** David Meir Zionts, COVINGTON & BURLING, LLP, Washington, D.C., for
Appellants.  Nicholas Steven Crown, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellees.  **ON BRIEF:** Michael C. Lynch, Damon W. Suden,
KELLEY DRYE & WARREN, LLP, New York, New York, for Appellants.  Brian M.
Boynton, Principal Deputy Assistant Attorney General, Daniel Tenny, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Thomas W. Krause,
Solicitor, Christina J. Hieber, Senior Counsel for Trademark Policy and Litigation, Mary

Beth Walker, Associate Solicitor, UNITED STATES PATENT AND TRADEMARK OFFICE, Alexandria, Virginia; Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellees.

———————————

RUSHING, Circuit Judge:

Plaintiffs Bacardi & Company Limited and Bacardi USA, Inc. (collectively, Bacardi) claim that the Director of the United States Patent and Trademark Office (PTO) violated Section 9 of the Lanham Act, 15 U.S.C. § 1059, and the PTO's own regulations by purporting to renew a trademark registration ten years after it expired. Bacardi sued under the Administrative Procedure Act (APA), 5 U.S.C. § 702, to set aside the allegedly unlawful agency action. The district court believed the Lanham Act precluded judicial review under the APA and so dismissed Bacardi's lawsuit for lack of subject matter jurisdiction. We conclude that the Lanham Act does not foreclose an APA action for judicial review of the PTO's compliance with statutes and regulations governing trademark registration renewal. We therefore reverse the district court's judgment.

I.

Underlying this appeal is a long-running trademark ownership dispute. From at least the 1930s, José Arechabala, S.A., a Cuban corporation owned principally by members of the Arechabala family, produced rum that it exported to the United States under the registered trademark HAVANA CLUB. In 1960, Cuba's Communist government seized and expropriated Arechabala's assets without compensation. *See Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 119–120 (2d Cir. 2000). By 1974, Arechabala's U.S. trademark registrations for HAVANA CLUB rum had expired, after which Empresa Cubana Exportadora de Alimentos y Productos Varios—a company owned by the Cuban government and doing business as Cubaexport—registered the HAVANA CLUB trademark in the United States for itself. *See Empresa Cubana Exportadora de Alimentos*

*y Productos Varios v. U.S. Dep't of the Treasury*, 638 F.3d 794, 797 & n.2 (D.C. Cir. 2011). Years later, Arechabala sold its interest in the mark to Bacardi, which filed its own application to register the HAVANA CLUB mark and petitioned the PTO to cancel Cubaexport's registration. The PTO denied Bacardi's application because of Cubaexport's preexisting registration, and the Trademark Trial and Appeal Board (TTAB) denied Bacardi's cancellation petition. Bacardi then filed a civil action in the United States District Court for the District of Columbia challenging the TTAB's denial of cancellation. *See* 15 U.S.C. § 1071(b) (authorizing judicial review). That lawsuit, filed in 2004, remains pending. *See Bacardi & Co. v. Empresa Cubana Exportadora de Alimentos y Productos Varios*, No. 1:04-cv-00519-EGS (D.D.C. Mar. 29, 2004).

Meanwhile, Cubaexport's registration was set to expire on July 27, 2006, unless it renewed its trademark. *See* 15 U.S.C. § 1058(a) ("Each registration shall remain in force for 10 years . . . ."). Specifically, the Lanham Act required Cubaexport to make two filings. Section 8 requires the owner of a trademark registration to file an affidavit identifying use of the registered trademark in commerce (or excusable nonuse) every ten years and pay a related fee. *See id.* § 1058. If the owner does not comply, the registration "shall be canceled by the Director" of the PTO. *Id.* § 1058(a). Section 9 provides that, subject to satisfying the requirements of Section 8, a trademark owner can renew its registration every ten years by filing a written application and paying a fee before the end of each successive ten-year renewal period or "within a grace period of 6 months" thereafter. *Id.* § 1059(a). If the PTO finds a renewal application deficient, the applicant may correct the deficiency "within the time prescribed after notification of the deficiency." *Id.* If an acceptable

4

renewal application is not filed within the statutory time period, "the registration will expire." 37 C.F.R. §§ 2.182, 2.184(b)(1), (c), 2.185(b).

When it was time for Cubaexport to renew its HAVANA CLUB registration in 2006, a trade embargo stood in its way. Pursuant to a 1998 law, Cubaexport was no longer permitted to pay the required renewal fee without first obtaining an exception (known as a "specific license") from the Department of the Treasury's Office of Foreign Assets Control (OFAC). *See Empresa Cubana Exportadora*, 638 F.3d at 797, 802. OFAC denied Cubaexport's request for a specific license, and the PTO notified Cubaexport that, because it failed to submit the renewal fee on time, its registration would expire.[1]

In October 2006, Cubaexport petitioned the Director of the PTO to reverse the decision denying renewal of its registration. *See* 37 C.F.R. § 2.146. Action on the petition was suspended while Cubaexport challenged OFAC's denial of a specific license in court, a lawsuit Cubaexport ultimately lost in 2012. *See Empresa Cubana Exportadora*, 638 F.3d at 802–803, *cert. denied*, 566 U.S. 986 (2012). The petition remained pending with the Director until January 2016, when OFAC changed course and issued a specific license authorizing Cubaexport "to engage in all transactions" and make payments "necessary to renew and maintain the HAVANA CLUB trademark registration." J.A. 43 (internal quotation marks omitted). Cubaexport then paid the renewal fee. The Commissioner for Trademarks, acting on behalf of the PTO Director, then granted Cubaexport's petition,

---

[1] Technically, the PTO informed Cubaexport that its registration would expire *and* be cancelled because in addition to failing the Section 9 renewal requirements, Cubaexport also failed to satisfy the Section 8 requirements regarding use in commerce and an accompanying fee.

accepted its 2006 renewal application, and renewed its HAVANA CLUB trademark registration.

Bacardi sued the PTO and its Director under the APA, 5 U.S.C. §§ 702, 706(2), alleging that the Director acted outside her statutory authority, contrary to law, and arbitrarily and capriciously when she permitted Cubaexport to pay its renewal fee ten years after the statutory deadline and granted renewal of its registration, which in Bacardi's view had already expired as a matter of law.[2]  As Bacardi emphasized, failure to comply with the statutory renewal deadlines "is not a minor technical defect which can be waived" by the PTO.  *In re Holland Am. Wafer Co.*, 737 F.2d 1015, 1018 (Fed. Cir. 1984).  Bacardi sought an order setting aside the Director's renewal decision, declaring that Cubaexport's HAVANA CLUB trademark registration expired in 2006, and instructing the PTO to remove the expired registration from its registry.

The district court dismissed Bacardi's complaint for lack of subject matter jurisdiction, reasoning that Bacardi could not sue under the APA because the Lanham Act forecloses judicial review.  *Bacardi & Co. v. USPTO*, No. 1:21-cv-1441, 2022 WL 2184940, at *2–4 (E.D. Va. Apr. 6, 2022).  In the court's view, "Congress intended for competing claims over the registration of a trademark to be resolved through an adversarial process," namely, "a cancellation proceeding as defined under 15 USC § 1064," where the defendant is not the PTO but the adverse party.  *Id.* at *2–3.  Finding the Lanham Act's cancellation procedures "comprehensive" for a "challenge to a trademark's registration,"

---

[2] Various Directors have led the PTO since the events underlying this suit.  The current Director, Kathi Vidal, is the named defendant on appeal.

the court concluded that Congress has "preclu[ded] . . . judicial review of the agency decisions to renew a trademark registration." *Id.* at *3.

Bacardi appealed, and we have appellate jurisdiction. *See* 28 U.S.C. § 1291. Our review is de novo. *See Polfliet v. Cuccinelli*, 955 F.3d 377, 380 (4th Cir. 2020); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

II.

The APA entitles a person "adversely affected or aggrieved by agency action" to "judicial review thereof." 5 U.S.C. § 702. This language "sets up a 'basic presumption of judicial review' of agency action." *Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282, 287 (4th Cir. 2022) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)); *see also Sackett v. EPA*, 566 U.S. 120, 128 (2012) ("The APA, we have said, creates a 'presumption favoring judicial review of administrative action.'" (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984))). But the APA identifies two exceptions to that principle: first, where "statutes preclude judicial review," and second, where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2). The PTO claims only the first exception here, so we must decide whether a statute, specifically the Lanham Act, precludes judicial review of PTO decisions granting trademark registration renewal.

In "determining 'whether and to what extent a particular statute precludes judicial review,'" we look "'to its express language'" and also to "'inferences of intent drawn from the statutory scheme as a whole.'" *Sackett*, 566 U.S. at 128 (brackets omitted) (quoting *Block*, 467 U.S. at 345, 349); *see also Barlow v. Collins*, 397 U.S. 159, 165 (1970) ("[T]he Court must decide if Congress has in express or implied terms precluded judicial review.").

7

"[P]reclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred," *Barlow*, 397 U.S. at 166, so courts "will decline to review agency actions only upon a showing that Congress clearly intended to restrict access to judicial review," *Ohio River Valley Env't Coal., Inc. v. Kempthorne*, 473 F.3d 94, 101 (4th Cir. 2006). The Supreme Court has variously instructed that only "clear and convincing indications," *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018) (internal quotation marks omitted), or "intent . . . fairly discernible in the statutory scheme," *Block*, 467 U.S. at 351 (internal quotation marks omitted), can demonstrate Congress meant to foreclose judicial review. In any event, "judicial review of . . . administrative action is the rule, and nonreviewability an exception which must be demonstrated." *Barlow*, 397 U.S. at 166.

Nothing in the Lanham Act expressly precludes judicial review of the PTO's trademark registration renewal decisions. Section 21 specifically authorizes parties dissatisfied with certain decisions of the Director or TTAB to "appeal to the United States Court of Appeals for the Federal Circuit" or institute "a civil action" in federal district court. 15 U.S.C. § 1071(a)(1), (b)(1). That section's only reference to renewal authorizes, rather than forecloses, judicial review for a disappointed "applicant for renewal." *Id.* § 1071(a)(1). It is silent about whether a third party may seek judicial review of the PTO's decision to grant a renewal application and certainly includes none of the typical language foreclosing judicial review. *See, e.g.*, *Lindahl v. Off. of Pers. Mgmt.*, 470 U.S. 768, 780 n.13 (1985) (citing examples of statutes declaring agency decisions "final and conclusive for all purposes and with respect to all questions of law and fact" and "not subject to review

8

by another official of the United States or by a court by mandamus or otherwise" (internal quotation marks omitted)).

We cannot agree with the district court's conclusion that Section 21 expressly precludes judicial review by declaring that the Director "shall not be made a party to an inter partes proceeding under . . . subsection [(b)]." 15 U.S.C. § 1071(b)(2). First, this paragraph doesn't bar judicial review of PTO actions at all but only specifies who may be named as a party in certain cases. No matter the named defendant, a civil action under subsection (b) involves judicial review of a decision by the PTO. Second, paragraph (2) restricts its application to "an inter partes proceeding under . . . subsection [(b)]." *Id.* It does not purport to limit proceedings under other sections or statutes such as the APA. Third, even in an inter partes proceeding under subsection (b), the civil "complaint shall be served on the Director" in a "case where there is no adverse party." *Id.* § 1071(b)(3). It is simply not the case that the PTO or its Director is shielded from appearing as a party in a civil proceeding. *See*, *e.g.*, *USPTO v. Booking.com B. V.*, 140 S. Ct. 2298, 2303 (2020) (lawsuit against PTO and its Director under 15 U.S.C. § 1071(b)); *Shammas v. Focarino*, 784 F.3d 219, 221 (4th Cir. 2015) ("If [a dissatisfied trademark applicant] elects to proceed in a district court and no adverse party opposed his application before the [PTO], the applicant must name the Director of the PTO as a defendant.").

The Lanham Act also does not impliedly preclude judicial review of registration renewal decisions under the APA. It is true that Section 21 lists certain persons entitled to judicial review—including, for example, a "party to a cancellation proceeding" and "an applicant for renewal"—without mentioning a third party aggrieved by a PTO order

granting a renewal application. 15 U.S.C. § 1071(a)(1). But the Supreme Court has cautioned that "[t]he mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others." *Abbott Lab'ys*, 387 U.S. at 141 (internal quotation marks omitted). Indeed, "if the express provision of judicial review in one section of a long and complicated statute were alone enough to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all." *Sackett*, 566 U.S. at 129. That is especially true here. A civil action pursuant to Section 21 invokes de novo judicial review on an expanded evidentiary record developed in court. *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014); *see also Booking.com*, 140 S. Ct. at 2303. Congress's provision of this non-deferential form of judicial review for some PTO decisions raises no inference that Congress intended to preclude the deferential review available under the APA for other PTO actions.

The PTO relies on *Block v. Community Nutrition Institute*, but that case is not analogous. In *Block*, the Supreme Court held that the Agricultural Marketing Agreement Act of 1937, which expressly allowed milk handlers to obtain judicial review of milk market orders after exhausting administrative remedies, implicitly precluded milk *consumers*, who were not subject to that administrative process, from obtaining judicial review of milk market orders under the APA. 467 U.S. at 346–347, 349. The statutory scheme established a "cooperative venture" among various players in the milk market, without any "provision for participation by consumers in any proceeding." *Id.* at 346–347. The omission of consumers, whose interests were aligned with those of handlers, indicated

10

that "Congress intended to foreclose consumer participation in the regulatory process" and likewise did not intend for consumers "to be relied upon to challenge agency disregard of the law." *Id.* at 347; *see also id.* at 352. By contrast, trademark challengers are allowed to participate in proceedings before the PTO and seek judicial review of various PTO decisions. No mismatch of exhaustion obligations exists here as in *Block*. And the interests of trademark challengers are not aligned with those of registration renewal applicants, who have reason to seek judicial review only if renewal is denied. If challengers like Bacardi cannot sue to enforce Section 9's deadline for renewal applications and fees, *see* 15 U.S.C. § 1059(a), the PTO could grant untimely renewals without oversight or consequence, in disregard of Congress's command.

Like the district court, the PTO primarily asserts that Congress "channeled competing claims regarding the right to a mark or the propriety of a registration" into cancellation proceedings under Section 14 of the Lanham Act. Response Br. 20. Because Bacardi claims a competing interest in registering the HAVANA CLUB trademark for itself, the PTO argues, its exclusive mechanism for judicial review is through a cancellation proceeding. According to the PTO, the limits Congress placed on cancellation proceedings demonstrate either that the Lanham Act impliedly precludes judicial review of PTO orders granting trademark registration renewal, *see* 5 U.S.C. § 701(a)(1), or that the Lanham Act provides an "adequate remedy" for such orders, *id.* § 704, thereby displacing the APA.

We disagree. Although the Lanham Act's scheme for resolving competing claims over the registration of a trademark may be so comprehensive as to preclude APA review of decisions to initially register a mark or cancel it, that is not the type of claim Bacardi has

brought here. And any preclusive reach of the cancellation provisions does not extend so far as to foreclose judicial review of allegedly unlawful agency action during the statutorily distinct registration renewal process.

Cancellation involves a claim that "the registrant is not entitled under law to maintain the registration" because "a statutory ground . . . negates the [registrant's] right to the subject registration." *Young v. AGB Corp.*, 152 F.3d 1377, 1379–1380 (Fed. Cir. 1998) (internal quotation marks and emphasis omitted). A cancellation petition generally must be brought within five years of the mark's registration, but petitions on certain grounds—such as that the mark has become generic, is functional, has been abandoned, or was registered fraudulently or contrary to certain statutory provisions—may be brought at any time. *See* 15 U.S.C. § 1064. As the PTO puts it, "the premise of a cancellation proceeding" is "a contention that a previously issued registration should be invalidated" based on "substantive disagreements regarding trademark ownership or registrability." Response Br. 21.

That is not the type of claim Bacardi has brought here. Bacardi contends that Cubaexport's HAVANA CLUB registration expired as a matter of law in 2006 when Cubaexport failed to pay the required renewal fee on time. *See* 37 C.F.R. § 2.184(b)(1) ("If no response is filed within this time period, the registration will expire."); *see also* 15 U.S.C. § 1059(a). When the Director purported to renew Cubaexport's registration in 2016, Bacardi claims, she acted outside the scope of her statutory authority, contrary to law, contrary to the PTO's own regulations, and without offering a reasoned explanation for the change in agency position. In this lawsuit, Bacardi does not seek relief based on

substantive disagreements regarding Cubaexport's right to register the HAVANA CLUB mark. Nor does Bacardi ask the court to resolve the parties' competing claims over ownership of the HAVANA CLUB mark. Rather, Bacardi seeks to set aside the Director's allegedly unlawful action of renewing Cubaexport's trademark registration in disregard of the statutory time limits.

Nothing about the Lanham Act's administrative and judicial review process for petitions to cancel existing trademark registrations, detailed though it may be, reveals an intent to foreclose judicial review of the entirely separate category of registration renewal decisions. Cancellation and expiration are different in form and substance, and they are governed by different statutory and regulatory provisions. Although Bacardi has competing pretensions to the HAVANA CLUB mark—which support its allegation that the PTO's action "aggrieved" Bacardi, 5 U.S.C. § 702—the claim it brings in this lawsuit doesn't ask the court to resolve those competing interests in the trademark or entitlement to registration. And the PTO identifies nothing in the statutory text or structure implying that the only relief a competing trademark claimant can pursue is cancellation of its competitor's mark, no matter the substance of its claim or the agency action it contests.[3]

---

[3] The PTO cites preclusion decisions under the Patent Act, but we do not find them helpful, given the different statutory context. For example, *Syntex (U.S.A.) Inc. v. USPTO* turned on "the specific statutory language" about patent reexamination. 882 F.2d 1570, 1574 (Fed. Cir. 1989). The court in *Pregis Corp. v. Kappos* found that the Act's "intricate scheme for administrative and judicial review of PTO patentability determinations . . . evinces a clear [c]ongressional intent to preclude actions under the APA seeking review of the PTO's reasons for deciding to issue a patent." 700 F.3d 1348, 1358 (Fed. Cir. 2012). And in one sentence of reasoning, the per curiam decision in *Exela Pharma Scis., LLC v. Lee* extended *Pregis Corp.* to PTO rulings reviving abandoned patent applications. 781 F.3d 1349, 1353 (Fed. Cir. 2015) (per curiam).

Finally, cancellation proceedings are not an "adequate remedy" for the PTO's allegedly unlawful renewal order. 5 U.S.C. § 704. The APA states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." *Id.* This is a "generous review provision[]" that "cover[s] a broad spectrum of administrative actions." *Abbott Lab'ys*, 387 U.S. at 140–141 (internal quotation marks omitted); *see also Kempthorne*, 473 F.3d at 100. It also clarifies that, where "Congress has provided special and adequate review procedures" relating to specific agencies, the "general grant of review in the APA" does not "provide additional judicial remedies." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (internal quotation marks omitted). As the Supreme Court has explained, "Congress intended by that provision simply to avoid duplicating previously established special statutory procedures for review of agency actions." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993).

No one contends that the agency action at issue in Bacardi's lawsuit—the PTO's allegedly unlawful renewal of Cubaexport's expired trademark registration—can be challenged in a cancellation proceeding under Section 14 of the Lanham Act. The PTO has explicitly held it cannot. *See Bonehead Brands, LLC v. Direct Impulse Design, Inc.*, No. 9206833, 2019 WL 646461, at *4 (T.T.A.B. Feb. 13, 2019) ("An allegation . . . that the USPTO should not have renewed a registration[] is not an available ground for cancellation under Section 14(3)."); *Galleon S.A. v. Havana Club Holding*, No. 92024108, 2004 WL 199225, at *14 (T.T.A.B. Jan. 29, 2004) (acknowledging that "improper renewal of a registration" is not a proper basis for a cancellation petition (internal quotation marks

14

omitted)).  And we have understood judicial authority over cancellation to be limited to statutorily enumerated grounds.  *See Shakespeare Co. v. Silstar Corp. of Am.*, 9 F.3d 1091, 1097 (4th Cir. 1993); *see also* 15 U.S.C. §§ 1064, 1119.

Judicial review of a cancellation proceeding therefore is not an "adequate remedy in a court" for this particular "agency action."  5 U.S.C. § 704.  Bacardi could (and did) pursue cancellation of Cubaexport's HAVANA CLUB trademark registration on grounds distinct from those advanced in this suit.  *See Bacardi & Co. v. Empresa Cubana Exportadora de Alimentos y Productos Varios*, No. 1:04-cv-00519-EGS (D.D.C. Mar. 29, 2004).  And success in that cancellation proceeding would achieve the general result Bacardi seeks here, removing Cubaexport's HAVANA CLUB trademark from the register. But the fact that a similar result could be achieved by challenging a *different* "agency action" does not demonstrate that an "adequate remedy" in court is available for *this* distinct "agency action."  5 U.S.C. § 704.  Section 704 "was intended to avoid . . . duplication"; it "should not be construed to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action."  *Bowen*, 487 U.S. at 903.

In sum, the Lanham Act does not, in express or implied terms, preclude judicial review of the PTO's compliance with statutes and regulations governing trademark registration renewal.  Nor does the Lanham Act provide an adequate remedy in court for PTO renewal orders that allegedly disregard statutory and regulatory limits.  The presumption favoring judicial review of administrative action remains unrebutted, thus Bacardi may seek review of the PTO's action under the APA.

15

III.

Through the APA, Congress has entitled persons aggrieved by agency actions to challenge those actions in court. Following the Supreme Court's direction, we will not lightly infer that other statutes rescind that entitlement. Having found nothing in the Lanham Act that expressly precludes judicial review of PTO registration renewal decisions or fairly implies congressional intent to do so, we conclude that the APA's mechanism for judicial review remains available. We therefore reverse the district court's judgment dismissing Bacardi's complaint for lack of subject matter jurisdiction and remand for further proceedings.

*REVERSED AND REMANDED*